

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00116-CV

_____

ANN CASSTEVENS, INDIVIDUALLY AND
ON BEHALF OF KENNETH CASSTEVENS, DECEASED, Appellant

V.

DANIEL SMITH AND SHANNON SMITH, Appellees

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 05-3448-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Ann Casstevens and her husband[1] were defrauded by their neighbors, Roger and Natalie Carroll, when they bought the Carrolls' house. Even though the Casstevenses paid the Carrolls $34,000 in cash and executed a note for $90,000 to the Carrolls and received a warranty deed, they were not informed that the Carrolls still owed two debts on the house—an original note to a bank for $88,800 and a second lien to the prior owners, Richard and Mary Campbell, for $18,200. Apparently no title history search was conducted. The Casstevenses made monthly payments to the Carrolls for six years, but the Carrolls did not pay off either of the debts on the house.

To make matters worse, in 2004 when the Casstevenses learned of the Carrolls' bank note, the Carrolls prevailed on them to prepay $64,000 cash purportedly to allow the Carrolls to pay off their bank obligation. But the Carrolls did not pay off either their first or second lien on the house. Ultimately, the Campbell note was foreclosed and on May 3, 2005, Daniel and Shannon Smith bought the property at the foreclosure sale for approximately $22,000 owed to the Campbells.

Appearing to recognize the dilemma of the Casstevenses, the Smiths indicated they would "work with" the Casstevenses and attempted to negotiate with them. The Casstevenses offered to reimburse the Smiths for their investment, but the Smiths declined and attempted to reach an agreement for the Casstevenses to pay rent. In late August 2005, the Smiths paid the bank approximately $44,000 and extinguished that lien. Based on these ownership rights, the Smiths asserted full ownership of the house and eventually evicted the Casstevenses.

---

[1]Kenneth Casstevens died after this controversy arose.

2

The Casstevenses have recovered a default judgment against Mr. Carroll based on statutory fraud, common-law fraud, violation of the Texas Deceptive Trade Practices Act, and for exemplary damages; Mrs. Carroll has declared bankruptcy. This suit is brought by Ann Casstevens, individually and on behalf of Kenneth Casstevens, deceased, against the Smiths. In it, Ann Casstevens relies on the theories of equitable subrogation, unjust enrichment, common-law and statutory fraud, filing fraudulent court records, unfair debt collection practices, and superior title to the property. The trial court granted a traditional and no-evidence summary judgment to the Smiths. For reasons stated below, we affirm the no-evidence summary judgment except with respect to an issue concerning the alleged violation of the Debt Collection Practices Act.

## I.        Standards for a No-Evidence Summary Judgment

In a no-evidence motion for summary judgment, the movant represents that no evidence exists as to one or more essential elements of the nonmovant's claims, upon which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The nonmovant then must present evidence raising a genuine issue of material fact on the challenged elements. *Id.* To defeat a no-evidence motion for summary judgment, the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i) cmt.

A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we

apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

We review the nonmovant's summary judgment evidence to determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.*; *Woodruff v. Wright*, 51 S.W.3d 727 (Tex. App.—Texarkana 2001, pet. denied). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.). In a summary judgment hearing, the trial court's decision is based on written pleadings and written evidence rather than live testimony. *See* TEX. R. CIV. P. 166a(c).

We first address the issue of equitable subrogation.

## II.  Equitable Subrogation

Casstevens argues that, by making payments to the Carrolls that the Carrolls used to pay on the first lien to the  Bank, Casstevens stepped into the shoes of the first lienholder, the bank.

The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue claims belonging to a party with standing. *Frymire Eng'g Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140 (Tex. 2008). As the Texas Supreme Court again recognized in *Frymire*, Texas courts interpret this doctrine liberally. Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily

4

liable and which in equity should have been paid by the latter." *Id.* at 142. Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief. The doctrine exists to prevent the unjust enrichment of the debtor who owed the debt being paid.

Frymire was a subcontractor who installed a water valve that ultimately failed in a hotel, causing extensive damage. According to Frymire's contract, it was responsible to the hotel for any damage caused. Frymire paid the damage claim pursuant to its contract with the hotel, but later sued the manufacturer of the valve in tort. The Texas Supreme Court recognized that the payment fulfilled a debt owed by Frymire to the hotel and concluded that a tort claim against the manufacturer still existed, along with some evidence that the manufacturing defect caused the injury. Thus, there was some evidence that Frymire paid a debt primarily owed by the manufacturer—and the court further found that the payment was involuntary, although made under the terms of the contract—noting that the contract was not with the manufacturer, but with another entity, and thus equitable subrogation was not foreclosed.

The doctrine of equitable subrogation "is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." *First Nat'l Bank of Kerrville v. O'dell*, 856 S.W.2d 410, 415 (Tex. 1993) (quoting *Oury v. Saunders*, 77 Tex. 278, 280, 13 S.W. 1030, 1031

5

(1890)); *Langston v. GMAC Mortgage Corp.*, 183 S.W.3d 479, 481 (Tex. App.—Eastland 2005, no pet.).

Casstevens argues that her monthly payments to the Carrolls, which they in turn paid to the bank on the first lien mortgage, created this equitable right of subrogation. It is clear that the Carrolls never completely paid off the first mortgage. Casstevens asserts that this alleged equitable subrogation right was in existence when the Smiths acquired title by buying the bank's lien on the property; therefore, it is argued, the Smiths' title is subject to this alleged equitable subrogation right.

The right of equitable subrogation arises when one pays the debt of another for which the other is primarily liable. For instance, if Casstevens had paid off the Carrolls' bank note in its entirety, under this theory Casstevens would step into the position of the bank and could recover from the Carrolls for the amount paid. Here, Casstevens is not attempting to assert a subrogation right against the Carrolls, but asserts that this right defeats or dilutes the ownership acquired by the Smiths when they acquired the bank's lien. We do not believe this is the purpose of the equitable subrogation doctrine—instead, the doctrine allows the payor to assert rights owned by a creditor against the party primarily liable—in this case, the Carrolls. Equitable subrogation is a legal fiction whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the party primarily liable. *Bennett Truck Transport, L.L.C. v. Williams Bros. Constr.*, 256 S.W.3d 730 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The purpose is to prevent the unjust enrichment of the debtor who was primarily liable. *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980). Here, any right of subrogation owned by

6

Casstevens could be asserted only against the Carrolls (the parties primarily liable), not against the bank or the Smiths.

A right of subrogation is not a substantive, tangible thing of such nature that it can be seized and held independently of a judicial proceeding; it is a right of action only—that is, it must be established by a judicial proceeding. *Downing v. Jeffrey*, 173 S.W.2d 241, 246 (Tex. Civ. App.—Galveston 1943, writ ref'd w.o.m.) (op. on reh'g). Here, even if Casstevens had proof of payment on behalf of the Carrolls, her equitable cause of action would be against the Carrolls, not the Smiths. We do not believe this unprosecuted, alleged cause of action that Casstevens may have against the Carrolls affects the title and ownership rights acquired by the Smiths.

The Texas Supreme Court has made it clear that the purpose of the doctrine is to prevent the unjust enrichment of the debtor who owed the debt that is paid. *O'dell*, 856 S.W.2d at 415. Who was unjustly enriched? Clearly the Carrolls were, and they were the debtors. The Smiths were not debtors, but the creditors. Allowing the doctrine of equitable subrogation to apply in these circumstances would not prevent the unjust enrichment of the wrongdoers, the Carrolls. Under these facts, the doctrine of equitable subrogation does not provide the remedy Casstevens seeks against the Smiths.

Further, the Smiths purchased the property at a foreclosure sale and received a trustee's deed subject only to the first lien. "A sale regularly exercised under a power is equivalent to strict foreclosure by a court of equity properly pursued." *Hampshire v. Greeves*, 104 Tex. 620, 627, 143 S.W. 147, 149–50 (1912).

7

"When a regular sale is made under a power contained in the instrument, not only the mortgagor, but all persons claiming any interest in the equity of redemption by a privity of estate with him are considered as parties to the proceeding, and are precluded by it as fully as if they had been made parties defendant by regular subpoena in an ordinary foreclosure suit." *Hampshire*, 143 S.W. at 149–50 (quoting *Aiken v. Bridgeford & Co.*, 84 Ala. 295, 4 So. 266 (1887)).

For the reasons stated above, there is no summary judgment evidence that places Casstevens in a factual situation where equitable subrogation would be available. Thus, the trial court's no-evidence judgment on this theory is correct.

### III. Restitution—Unjust Enrichment

We next examine Casstevens' claim seeking restitution for the unjust enrichment of the Smiths. Unjust enrichment, itself, is not an independent cause of action, but rather "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App—Fort Worth 2006), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007) (quoting *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)). The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him or her to retain ought to make restitution. *Argyle Indep. Sch. Dist. v. Wolf*,

234 S.W.3d 229, 246–47 (Tex. App.—Fort Worth 2007, no pet.); *Elledge*, 197 S.W.3d at 832; *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).[2]

Casstevens points to summary judgment evidence that the Smiths had obtained the benefit of ownership of the house for a fraction of its actual value—and that they were able to obtain this benefit only because of the active fraud of a third party. Therefore, Casstevens argues that it would be unconscionable for the Smiths to retain the "enrichment." Although each of these statements is literally correct, they do not control. The question is whether some implied contract might exist between the Smiths and Casstevens that would require the Smiths to repay Casstevens even in the absence of a formal written obligation to do so.

There is not. The property was properly sold at a foreclosure auction, evidently utilizing the methods provided by the Legislature for that purpose. It was purchased by the Smiths. At that point, they owned the property subject to the prior, superior first lien of the bank. However, barring foreclosure by that bank for failure to pay that note, under their lawful purchase at foreclosure, the Smiths had an immediate right to possession of the house. Further, we note that the controlling statutes require only that notice of such proceedings be given to the parties named on the requisite documents as the debtors, and not to other parties, known or unknown. TEX. PROP. CODE ANN. § 51.002(b)(3) (Vernon Supp. 2008) (notice of sale must be given to each debtor who, according to records of mortgage servicer of debt, is obligated to pay debt).

---

[2]Unjust enrichment is also found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Ultimately, unjust enrichment is not a proper remedy "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 40 (Tex. App.—Corpus Christi 1990), *aff'd*, 832 S.W.2d 339 (Tex. 1992). The profit must be "unjust" under principles of equity. *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998).[3] This is one area in which the law does not reward morally

[3]*See discussion Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837–38 (Tex. App.—Dallas 2008, no pet.). Texas courts have allowed restitution for these types of claims in a variety of cases: by a defrauded party against the party who committed the fraud, *see Staats v. Miller*, 150 Tex. 581, 583–85, 243 S.W.2d 686, 686–88 (1951); *Wiseman v. Baylor*, 69 Tex. 63, 64–66, 6 S.W. 743, 743–44 (1887); by a party that made an overpayment, *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 710–13 (Tex. Civ. App.—Dallas 1971, no writ); and by a party that paid or credited money to the wrong person or account, *see Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 163–65 (Tex. App.—El Paso 1997, no writ) (payment to wrong person); *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 710–11 (Tex. App.—Corpus Christi 2006, pet. denied) (payment applied to wrong account); *Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, P.L.L.C.*, 143 S.W.3d 518, 520 (Tex. App.—Dallas 2004, pet. denied) (earnest money released to wrong client).

Conversely, some Texas courts have rejected a claim for restitution and held that money paid under a unilateral mistake of fact cannot be recovered. *See, e.g.*, *Pac. Molasses Co. v. Graves*, 451 S.W.2d 294, 298 (Tex. Civ. App.—San Antonio 1970, writ ref'd n.r.e.); *Sellman v. Am. Nat'l Ins. Co.*, 281 S.W.2d 150, 154 (Tex. Civ. App.—Texarkana 1955, writ dism'd). And other courts have held that, as between two innocent parties, the party that must suffer the loss is the one that mistakenly created the situation and was in the best position to have avoided it. *See Holden Bus. Forms Co. v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 83 S.W.3d 274, 278 (Tex. App.—Fort Worth 2002, no pet.) (self-insured employer denied restitution of insurance benefits paid to hospital before employer discovered claim not covered by plan); *Lincoln Nat'l Life Ins. Co. v. Rittman*, 790 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1990, no writ) (insurer denied restitution of benefits paid to hospital after coverage terminated); *Lincoln Nat'l Life Ins. Co. v.*

wrong behavior or business dealings which happen to be clothed with some indicia of legality. *See discussion at Edwards*, 252 S.W.3d at 837–38. However, the party must have some connection with the wrongdoing in order for a plaintiff to recover, and in this case, as the Smiths acted in accordance with controlling statutory law as designed by the Legislature, we cannot agree that this evidence provides any proof that their actions were such as to justify the application of the doctrine.

Under these facts, even though the Smiths stand to make a substantial profit on their purchase, and Casstevens lost a substantial amount of money—as well as the house, the Smiths' actions followed the requirements of the law, and thus no extraneous implied contract between the parties can exist. Under the rationale proposed by Casstevens, every purchaser at a proper foreclosure sale could be said to have received an unjust enrichment if he or she bought the property and made a substantial profit while the debtor has lost all equity in the property. Further, unlike the situations in the cases summarized in the footnote, in this case, there is no evidence that the Smiths committed fraud against Casstevens in exercising their right of ownership and possession of the house. Further, there was no unjust enrichment of the Smiths, but only the Carrolls.

The contention of error is overruled.

## IV.    Declaratory Judgment—Reimbursement

Casstevens also argues that, if she obtains relief under either of these theories, the trial court should order the house sold so Casstevens can recover the amount paid, minus equitable adjustments

---

*Brown Schs., Inc.*, 757 S.W.2d 411, 415 (Tex. App.—Houston [14th Dist.] 1988, no writ) (same).

11

appropriate to reimburse the Smiths. Under our resolution of the preceding issues, this argument is moot, and the trial court properly rendered summary judgment.

## V.  Fraud—Common-Law and Statutory

Casstevens also alleges that she was defrauded by the Smiths both on a common-law basis and for statutory fraud (TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 2002) (fraud in a real estate transaction)).

Common-law fraud occurs if (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Statutory fraud under the Texas Business and Commerce Code in a real estate transaction occurs when a party makes a false representation of fact or a false promise to induce the plaintiff to enter into an agreement, the plaintiff relies on the false promise by entering into the agreement, and the reliance causes injury to the plaintiff. TEX. BUS. & COM. CODE ANN. § 27.01.

### A.  Common-Law Fraud

Casstevens points to the following summary judgment evidence to avoid the no-evidence judgment—taken from letters mailed to Casstevens by the Smiths—quoted below.

12

If we work together, we may be able to resolve the issue of the prior liens against this property.

. . . .

We desire to work together with you to try to salvage something positive out of this apparent misunderstanding or wrongdoing on the part of [the second owners].

Let me first make the point that we are eager to work with you in any manner that we can to come to a reasonable solution to this unfortunate problem.

. . . .

As with our previous contact, I would like to emphasize that we desire to work together with you going forward so that we can try to salvage something positive out of this apparent wrongdoing on the part of the [second owners].

We do desire to work with the Casstevens in this matter. . . .

As also pointed out by counsel, Daniel Smith stated that he intended for Casstevens to rely on those statements, and according to Casstevens, based on these representations, she took no individual action to obtain the bank's first lien position.

After the Smiths bought the property at a foreclosure sale based on the Carrolls' debt to the Campbells, the Smiths posted a letter at the home addressed to "Roger and Natalie Carroll." This letter informed them that the Smiths had bought the property (1630 Boldt, Tyler, Texas) at a foreclosure sale and asked the Carrolls to contact them. Instead, the Casstevenses contacted the Smiths and advised of their transaction with the Carrolls. Following that, Daniel Smith wrote a letter to Casstevens expressing his surprise at Casstevens' ownership and asking her to "find the title policy that you stated you had from the purchase of the property from Roger and Natalie Carroll, or through the refinance of the property with Regions Bank." He then stated that, "[i]f we work together, we may be able to resolve the issue of the prior liens against the property." Casstevens

13

alleges this was a material misrepresentation which was relied on by her to her detriment. A material misrepresentation must be a false statement. "Misrepresentation" is a falsehood or untruth with the intent and purpose to deceive. *Vela v. Marywood*, 17 S.W.3d 750 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001).

We do not believe there is evidence in the record to support a finding that this statement was false when it was made. According to evidence in the record, this statement was made after the Smiths had conversed with Mr. or Mrs. Casstevens and was advised a title policy was issued when the Casstevenses bought the property. If a title policy had been issued, there would have been different legal consequences than if no such policy existed. For instance, if a title insurance policy covered Casstevens' ownership claim to the property, it is conceivable that further investigation might reveal that Casstevens' ownership of the property was valid and the Smith foreclosure was not based on good title. Or the title policy existence could have meant Casstevens was entitled to recover the face amount of the policy. In this context, we do not find that there is any fact issue that the Smiths' statement agreeing to "resolve the issue of the prior liens against the property" was a false statement at the time it was made.

We find the other statements Casstevens alleges to be misrepresentations likewise are not material misrepresentations of facts. Agreeing to "work together" to attempt to salvage something positive from the dilemma caused by the Carrolls' fraudulent activity toward Casstevens is at most a vague statement professing an attitude of good faith rather than a representation of a fact.

14

Further, we find there is no evidence that, even if Casstevens had the opportunity to purchase the prior lien, and even had she done so, that would have improved her position. At that time, the Smiths had purchased the house at the foreclosure of the second lien and were the owners of the house subject only to the first lien of the bank. The Carrolls no longer had any ownership interest in the house. Had Casstevens purchased the bank's first lien and assumed the bank's legal status in this transaction, the Smiths could have paid them the $44,000 and secured all ownership rights in the house. In essence, Casstevens would have not benefitted by obtaining the bank's first lien position. So Casstevens did not suffer any injury by any actions of the Smiths.

At oral argument, Casstevens argued that she could have obtained ownership of the house if she had purchased the bank lien, then the Carrolls had defaulted (which they surely did) and if Casstevens had then foreclosed on the lien—without the Smiths having the opportunity to purchase the lien at auction. We acknowledge that the lienholder would not have been required to inform the Smiths about the foreclosure sale—as the Smiths were not a party to that note. But we cannot speculate that somehow Casstevens would have been able to secrete from the record owners, the Smiths, the fact that a foreclosure notice had been posted in the authorized places, particularly in light of the extraordinary attention the Smiths were devoting to this transaction.

For all of the above reasons, we hold the trial court properly granted a summary judgment on Casstevens' common-law fraud theory.

**B.      Statutory Fraud**

Another argument set out by the Smiths is that, as a matter of law, the Texas Business and Commerce Code fraud claim fails because no real estate transaction was involved. Obviously, a real estate transaction was involved. The Smiths argue that, as a matter of law, the Texas Business and Commerce Code claim fails because the Smiths and Casstevens were not involved in a real estate transaction with each other.

The statute defines fraud as a false representation made "to a person for the purpose of inducing that person to enter into a contract" which was both relied upon and resulted in harm. TEX. BUS. & COM. CODE ANN. § 27.01(a)(1). It does not specify that the person making the representation must be the other party to the contract (although that is certainly the normal situation), and there are cases in which (under agency theory) real estate brokers and salespersons are held liable for representations relied on by a purchaser. *See Woodlands Land Dev. Co. v. Jenkins*, 48 S.W.3d 415 (Tex. App.—Beaumont 2001, no pet.).

This case does not fit within these general categories. It is apparent that a real estate transaction was involved, but there is no evidence of false representations made by the Smiths for the purpose of inducing Casstevens to enter into a contract. Thus, as a matter of law, the trial court correctly entered a summary judgment in the Smiths' favor on the statutory fraud claim.

## VI. False Pleadings—Fraudulent Court Records

Casstevens also alleged that the Smiths filed sworn complaints in justice of the peace court that they knew to be false, thus violating the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (Vernon Supp. 2008).

The Smiths correctly state that there is no evidence that they filed a "fraudulent court record." That term is defined as a decree, judgment, order, subpoena, warrant, minutes, or other document issued by a court. The term can also include a "document or other record" which might be a "fraudulent lien or claim against real or personal property or an interest in real or personal property; . . . . " TEX. CIV. PRAC. & REM. CODE ANN. § 12.002(a)(1) (Vernon Supp. 2008).

These code sections have been utilized several times recently in claims against various parties that had attempted to enforce liens that were ultimately shown to be fraudulent. This is in the nature of the third possible type of action, involving a fraudulent "claim against real or personal property." *Id.*

The "sworn complaint for forcible detainer" pleadings demand that Casstevens be evicted from property owned by the Smiths.[4] Casstevens argues that such a pleading amounts to the filing of a fraudulent lien or claim against the real property because the Smiths knew they did not have a written or oral lease with Casstevens. We disagree. At the time the Smiths filed this pleading, they owned legal title to the property subject only to the bank's first lien. The Smiths had attempted to

---

[4]Michelle Clark is listed as the plaintiff in that action. It appears that she is an employee of the company owned by the Smiths which handles their rental properties.

obtain an agreement with Casstevens for the amount of rent to be paid. Casstevens was in possession of the property owned by the Smiths. Even without a written or oral lease, one who possesses another's real estate and is recognized as the tenant owes a reasonable rental value for use and occupation of the real estate. *Robbins v. Voss*, 64 S.W. 313 (Tex. Civ. App. 1901); 64 TEX. JUR. 3D RESTITUTION & CONSTRUCTIVE TRUSTS § 36 (2003). We do not believe the Smiths' assertion of a legal right to rent for Casstevens' possession of the Smiths' real property is a fraudulent lien or claim against real estate. The point of error is overruled.

## VII. Unlawful Collection Practices

Casstevens also alleged the Smiths violated the Texas Finance Code by using threats or coercion, harrassment or abuse, unfair or unconscionable means, fraudulent acts, or deceptive acts and thereby also violated Section 27.01 of the Texas Business and Commerce Code. *See* TEX. FIN. CODE ANN. §§ 392.301–.306 (Vernon 2006).

Section 392.304(a) states that a collector may not use a "fraudulent, deceptive, or misleading representation that employs the following practices . . . ." Casstevens states that there is summary judgment proof of three of the practices.

> (1)    using a name other than the:
>
>     (A)    true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection;
>
> . . . .

(8)     misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

. . . .

(19)    using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

TEX. FIN. CODE ANN. § 392.304.

The summary judgment proof in reference to the first claim shows that the collection proceeding was begun not by those claiming ownership, or even in the name of their company, but in the individual name of one of their employees, Clark. In her deposition, Clark said that she signed it in that fashion as instructed by one of the Smiths. However, it also appears that she was using (as the debt collector) her true personal name. Although this does have the potential for confusion, as an individual who appears, essentially out of nowhere, to claim to be entitled to money—it is nonetheless technically within the ambit of the statute. *See discussion*, 28 Stephen Cochran, *Texas Practice: Consumer Rights & Remedies* § 15.13 (3d ed. 2002). All this statute requires is a finding that the "true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection [was used]." TEX. FIN. CODE ANN. § 392.304. While this pleading may have been subject to other exceptions or legal issues, the proper name, Michelle Clark, was listed as the debt collector.

But, by proceeding in this manner, an issue is raised as to whether the Smiths violated a provision in the statute which disallows "using any other false representation . . . to collect a

19

debt . . . ." TEX. FIN. CODE ANN. § 392.304. The pleading filed in the justice court names only Michelle Clark as the plaintiff. In the body of the pleading, she is identified as the "plaintiff (landlord)." It is further alleged that the plaintiff (Clark) entered into an agreement with Casstevens for the payment of rent, that plaintiff demanded possession of the premises, and requested the court to grant her a judgment of possession. The pleading is signed by Michelle Clark without any indication that she is acting as an agent for or on behalf of the Smiths. The evidence is not disputed that Clark was not the owner or landlord of the property, did not enter any agreement with Casstevens, and consequently was not authorized to obtain a judgment as alleged. We find the trial court erred in disposing of this issue by a summary judgment.

## VIII. Trespass to Try Title

Casstevens was in actual physical possession continuously since October 1998 until recently and ask the court to find her title superior to the Smiths' title.

In a trespass-to-try-title action, a plaintiff recovers on the strength of his or her own title. *Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981); *Land v. Turner*, 377 S.W.2d 181 (Tex. 1964); *Woodrow v. Henderson*, 783 S.W.2d 281, 282 (Tex. App.—Texarkana 1989, no writ). Recovery can be based on proof of (a) title through regular chain of conveyances from the sovereign, (b) superior title out of a common source, (c) title by limitations, or (d) unabandoned prior possession of the land. *Plumb*, 617 S.W.2d at 668; *Session v. Woods*, 206 S.W.3d 772, 774 n.2 (Tex. App.—Texarkana 2006, pet. denied). Generally, the earlier title emanating from a common source

20

is better title and superior to others. *Diversified, Inc. v. Hall*, 23 S.W.3d 403, 406 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

The summary judgment evidence is as follows. The Casstevenses obtained title in 1998 from the Carrolls—a warranty deed of conveyance—showing a $34,000 cash payment and execution of a promissory note for $90,000 to the Carrolls. The deed was duly recorded. In 2004, the Casstevenses borrowed $64,000 from their bank to pay off the note to the Carrolls, so they could pay off their own first lien note. The 1998 warranty deed, according to its own terms, became "absolute" upon payment of that note. The Carrolls executed a release, which was recorded. The Casstevenses had actual, uninterrupted, and exclusive possession of the house for nine years.

Casstevens argues that, before any of the actions involving the Smiths occurred, she was already equitably subrogated to the first lien position, which is a title superior to that claimed by the Smiths due to their later "secret" purchase of the first lien from the bank.

As a matter of law, based on the summary judgment evidence, the Smiths obtained superior title when they purchased the lien at a foreclosure sale. That property remained subject to the lien held by the bank. The Smiths argue the Carrolls' chain of title was cut off by the trustees deed foreclosing the vendor's lien to the Campbells, thus legally the Smiths' chain is superior. Barring some other issue intervening in the analysis, this is correct.

In response to Casstevens' equitable subrogation claim, we have previously addressed and disposed of that issue in favor of the Smiths' position. Accordingly, we conclude that there is no

evidence to support Casstevens' position that her trespass-to-try-title claim should prevail. The trial court correctly rendered summary judgment on this issue.

## IX.    The Traditional Motion for Summary Judgment

In reviewing a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993).

The Smiths argue that we should uphold the traditional motion for summary judgment because they proved as a matter of law that the "bona fide purchaser" defense insulates them from liability under *any* equitable theory, that Casstevens has "unclean hands" and that recovery of restitution is barred by limitations statutes. We have decided that the trial court did not err in granting the no-evidence motion for summary judgment on behalf of the Smiths except in regard to Casstevens' claim of violation of the Debt Collection Practices Act. That claim remains to be considered in any event. Therefore, due to our holding and disposition of the no-evidence summary judgment, it is not necessary to consider the Smiths' traditional motion for summary judgment issue.

## X.     Conclusion

We affirm the no-evidence summary judgment except in respect to the Debt Collection Practices Act issue.  We reverse and remand that issue to the trial court for its consideration in accordance with this opinion.  In all other respects, the summary judgment of the trial court is affirmed.


Jack Carter
Justice

Date Submitted:     September 10, 2008
Date Decided:       October 23, 2008