

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00303-CV

_____

MARSHALL LANDERS, Appellant

V.

DONNA SNOW LANDERS; HAROLD SNOW; H.D. SNOW AND SON
HOUSE MOVING, INC.; AND CARLENE SNOW, Appellees

_____

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-615202-17

_____

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

When Marshall Landers[1] and Donna Landers divorced, Donna's parents and their corporation intervened to enforce their rights to several pieces of property then in the Landerses' possession. Now, Marshall appeals the trial court's award of a John Deere skid steer[2] to his former father-in-law's corporation, H.D. Snow and Son House Moving, Inc. (Moving Company). Marshall contends that the trial court abused its discretion by failing to recognize and compensate the community estate for its equitable interest in the skid steer, thereby contradicting the great weight of the evidence and unjustly enriching the Moving Company.[3] But Marshall did not plead any claims or

---

[1]On November 19, 2020, Appellees' counsel filed a suggestion of death indicating that Appellant Marshall Landers died on August 4, 2020. Marshall's counsel has not confirmed or responded to this suggestion of death. Regardless, pursuant to Rule 7.1(a)(1) of the Texas Rules of Appellate Procedure, we "proceed to adjudicate the appeal as if all parties were alive." Tex. R. App. P. 7.1(a)(1).

[2]A skid steer, commonly referred to as a "bobcat," is a piece of equipment that performs various functions, such as moving dirt and digging holes. According to Donna, the skid steer at issue in this case had "a bucket . . . on the front of it" to "scoop dirt and things like that up."

[3]Marshall claims that the judgment unjustly enriched not only the Moving Company, but all of the "Appellees"—a label which includes Donna, her parents, and the Moving Company. However, the trial court's judgment awarded the skid steer to the Moving Company, not to Donna or her parents in their individual capacities. Marshall has not distinguished between the Appellees in his brief or explained why or how the trial court's judgment in favor of the Moving Company unjustly enriched Donna or her parents. We therefore interpret Marshall's brief in light of the trial court's judgment, construe his use of the broad label "Appellees" as an oversight, and address his unjust-enrichment complaint only as to the Moving Company.

2

defenses asking the trial court to grant the relief he faults it for denying, nor has Marshall argued that his claim for equitable relief was tried by consent. Moreover, even on appeal, the only equitable claim Marshall advances is unjust enrichment, which this court has rejected as an independent cause of action. Because we hold that the trial court did not abuse its discretion by failing to grant equitable relief based on an unpleaded cause of action we do not recognize, we will affirm the trial court's judgment.

## I. Background

This case began as a divorce action to terminate the marriage of Marshall Landers and Donna Landers.

## A. Marital Woes

The Landerses experienced significant financial difficulties during their marriage, marring their credit history. It is undisputed that Donna's parents, H.D. and Carlene Snow, purchased several pieces of real and personal property to help the couple get back on their feet. One such item was a John Deere skid steer.

Marshall needed the skid steer for his business, but the Landerses could not obtain financing to purchase the machine. To help, H.D used his good credit history and relationship with John Deere, along with those of his Moving Company,[4] to purchase the skid steer. About $85,000 of the purchase price was financed for a term

---

[4]H.D. and Carlene Snow owned the Moving Company, and they split up unspecified portions of their ownership interests among some of their children. However, H.D. served as the President of the Moving Company.

of four years.[5]  H.D. and his Moving Company allowed Marshall to use the skid steer in exchange for monthly payments equal to the amount owed to John Deere, with the intention of transferring ownership to the Landerses if and when they paid it off.

Although Marshall made monthly payments on the skid steer for several years, H.D. asserted that these payments were inconsistent and often arrived late.  But the Moving Company, of course, remained financially responsible for the skid steer,[6] and H.D. continued making on-time payments to John Deere.

## B.  Divorce and Property Dispute

In March 2017, Donna petitioned for divorce, and Marshall responded with a counterpetition for divorce.  The trial court entered a temporary order that, among other things, allowed Marshall to retain "temporary use of the skid [steer] loader . . . being purchased from H.D. Snow" and made Marshall responsible for the monthly payments on the machine.[7]  But according to H.D., Marshall was already in

---

[5]At trial, multiple witnesses approximated the purchase price at $85,000. However, the financing and security agreement with John Deere indicated that the total price—including taxes, fees, insurance, and applied rental payments—was $91,025.26. There was no financing charge.

[6]The Moving Company was the primary borrower under the terms of the financing and security agreement.  H.D. cosigned the contract in his individual capacity.

[7]An associate judge signed the initial temporary order in March 2017, and the trial court entered an order clarifying and formalizing the associate judge's temporary order in June 2017.

4

arrears when the temporary order was issued;[8] he failed to make payments in March or April of 2017. H.D. demanded the return of the skid steer until Marshall began making payments again, but Marshall refused.

The Snows and the Moving Company then filed a petition in intervention asserting their ownership of the skid steer, asking the trial court to order its return, and suing for breach of contract. The Snows also asserted claims related to their ownership of a piece of real property known as the Ten Acres.[9]

Marshall answered the petition in intervention with a general denial and asserted several defenses specific to the Ten Acres. He also counterpetitioned for a declaratory judgment recognizing his equitable title to the Ten Acres and to a second piece of real property known as the Five Acres.[10] However, neither Marshall's answer nor his counterpetition mentioned the skid steer; apart from Marshall's general denial, his filings against the intervenors addressed only the disputed real property.

Although Marshall resumed making payments on the skid steer after the Snows intervened, he soon experienced medical issues that prevented him from using the

---

[8]The record indicates that the monthly payments were due on the 11th of each month, and the temporary order was entered on March 31, 2017.

[9]Much like the skid steer, the Ten Acres was a property the Snows purchased to help their daughter after the Landerses' financial difficulties.

[10]The claims in Marshall's counterpetition related solely to the disputed real property owned by the Snows in their individual capacities. Nonetheless, Marshall's counterpetition erroneously named the Moving Company as a defendant.

machine, and he stopped making payments altogether.[11] An associate judge entered a new temporary order requiring Marshall to return the skid steer to the Moving Company. Marshall returned the machine, and H.D. and the Moving Company paid it off.

## C. Bench Trial

The parties tried the case to the bench in June 2019.[12] They began the proceeding by identifying their live pleadings and providing the court with copies.[13] Again, in his dispute with the intervenors, neither Marshall's live answer nor his live counterpetition mentioned the skid steer.

The parties then testified. It was undisputed that the Moving Company agreed to purchase the skid steer for Marshall's use, that Marshall orally agreed to make monthly payments on the skid steer sufficient to cover the amount the Moving

---

[11]H.D. sent Marshall multiple letters demanding payment for or the return of the skid steer. In a March 2018 letter—H.D.'s final letter demanding payment from Marshall before seeking court intervention—he stated that the "total combined amounts owed to John Deere and H.D. Snow [we]re $15,947.86."

[12]In 2018, Carlene Snow nonsuited all of her claims against Marshall Landers, and the trial court dismissed the claims without prejudice.

[13]At the beginning of the bench trial, the parties stipulated to the admission of one another's documentary exhibits. One such exhibit was Marshall's live inventory. In the inventory—originally filed in July 2017—Marshall averred that his and Donna's names were on the title of the skid steer, he estimated the market value of the skid steer at $30,000, he averred that he and Donna owed approximately $28,000 on the machine, and he thus claimed they had approximately $2,000 in net equity.

Company owed to John Deere, and that Marshall stopped making payments before the skid steer was paid off. But the parties disputed the nature of Marshall's monthly payments, the number of payments Marshall had missed, and the consequences of Marshall's breach.[14]

Donna and H.D. generally characterized the oral contract in a manner analogous to a rent-to-own agreement. They described the monthly payments as "ren[t]" and testified that, due to Marshall's breach of the oral agreement, the machine belonged to the Moving Company. H.D. estimated that Marshall had missed "roughly six" rental payments, and that H.D. had been forced to cover "over $30,000" in payments to John Deere.[15] H.D. thus "ask[ed] the Court . . . to declare that [the skid steer] belong[ed] to [his] company."[16]

Marshall then took the stand. He admitted that he had not made all of the monthly payments he agreed to make to the Moving Company. However, he claimed

---

[14]The parties disputed other issues related to the oral agreement as well, including the condition of the skid steer upon its return to the Moving Company.

[15]H.D. also testified that, when Marshall returned the skid steer to the Moving Company, it was in "tremendous bad shape" and H.D. paid more than $5,000 to get it "where it would run a little bit." He anticipated the need for additional repairs.

[16]In response to a question from his attorney, H.D. confirmed that he was "asking the Court, by way of [a] declaratory judgment here, to declare that [the skid steer] belong[ed] to [his] company." But the intervenors did not plead a claim seeking a declaratory judgment regarding the skid steer, and the appellees have not argued that such a claim was tried by consent.

he stopped making payments because "all of a sudden the price jumped up."[17] Marshall did not identify how or why the price "jumped up," nor did he clarify whether he considered the alleged price increase a valid contractual justification for his failure to make payments. Regardless, Marshall testified that when he stopped making payments, he had only missed a single rental payment of approximately $1,700 and that the Moving Company's payoff balance with John Deere was only $3,500.[18] Marshall acknowledged that he did not legally own the skid steer "outright," but—after estimating the market value of the skid steer at $20,000 to $30,000—he stated that he wanted H.D. to "buy [him] out" of the skid steer for $25,000.[19] On cross examination, however, Marshall appeared to back away from this position by testifying that he "d[i]dn't know" whether he owed H.D. or the Moving Company additional money for the skid steer.

During closing arguments,[20] the intervenors' counsel emphasized that Marshall had admitted his breach of the oral agreement and had admitted the Moving Company

---

[17]Marshall admitted in his deposition that, when the parties entered into the oral contract for the skid steer, they did not specify the precise amount of the monthly payments; rather, Marshall just agreed to "make the payments."

[18]The financing and security agreement included in the trial court's file indicated that the monthly payments were $1,772.19.

[19]Marshall disputed H.D.'s testimony regarding the condition of the machine upon its return to the Moving Company; Marshall claimed that he had ensured that necessary maintenance was done.

[20]Prior to closing arguments, additional witnesses testified on matters not relevant to this appeal.

legally owned the skid steer.[21]   The intervenors' counsel speculated that, "at most, [Marshall's] claim would be for reimbursement" but emphasized that Marshall had not provided any evidence to support such a claim and that "[Marshall] d[id]n't simply get money back because he paid money in; that's not a measure of cognizable [damages] at law."

In Marshall's closing, his counsel acknowledged that Marshall had not made all of the monthly payments required under the terms of the parties' oral contract. Marshall's counsel then repeated his request for a buyout and claimed that the failure to order such a payment would result in H.D.'s unjust enrichment:

> [O]ut of the $85,000 purchase price, $75,000 of that was paid by the [Landerses].  All right?  Them not getting the benefit of that bargain is called unjust enrichment. . . .  [T]hey weren't renting the property from H.D. . . .  [I]t was their skid steer from the start[;] he was merely covering it up for them.  And because of those payments missed at the end, he doesn't get to say, . . . . ["]You don't get any value for your money back.["]  *That's unjust enrichment.  That's a[n] equitable remedy that I'm requesting.*  I would demonstrate all the evidence of it.  We know how much the skid steer cost.  We know how much they paid.  We know how much that Mr. Snow was out of pocket.

---

[21]Due to Marshall's failure to timely respond to discovery, he was deemed to have admitted "that the title of the John Deere Skid Steer [wa]s held solely in the name of H.D. Snow and Son Moving Company, Inc."  However, the Moving Company waived its right to rely on this deemed admission by failing to object when controverting evidence—contained in Marshall's live inventory—was offered.  *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) ("[A] party waives the right to rely upon an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions.").  Regardless, Marshall's closing argument implied that he no longer disputed legal ownership of the skid steer, and his appeal asserts only an equitable interest.

My client has asked that $25,000 would be sufficient to buy their interest back out of that and waive any other interest. [Emphasis added.]

This reference to "unjust enrichment" in Marshall's closing was his first mention of the claim at trial and his first identification of a specific equitable cause of action.

## D. Judgment

The trial court rendered judgment resolving the skid steer dispute in favor of the Moving Company.[22] Specifically, the court "ORDERED AND DECREED that [the Moving Company] own[ed] and that neither [Donna] nor [Marshall] ha[d] any claim in law or in equity, or any right, title, or interest in and to . . . [t]he . . . Skid Steer."[23]

Marshall appealed, arguing that the trial court abused its discretion by failing to recognize and compensate the community estate for its alleged equitable interest in the skid steer.

---

[22]The trial court also issued findings of fact and conclusions of law; it found that "H.D. and the Moving Company purchased the Skid Steer and entered into a security agreement with John Deere," that they "allowed [Marshall] to use the Skid Steer for his business as long as he made payments on the loan," that Marshall "failed to make all payments on the Skid Steer," and that "H.D. and the Moving Company were forced to take over making the payments on the Skid Steer until it was eventually paid off."

[23]At the time of trial, the only pleaded claim related to the skid steer was the intervenors' breach of contract claim. Neither party has argued that other claims were tried by consent. We thus construe the trial court's judgment consistent with the pleadings. *See* Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings[.]").

## II. Standard of Review

Generally, a trial court exercises broad discretion to determine "the expediency, necessity, or propriety of equitable relief."[24] *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008) (quoting *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979)); *see Sister Initiative, LLC v. Broughton Maint. Ass'n, Inc.*, No. 02-19-00102-CV, 2020 WL 726785, at *29 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 506 (Tex. App.—Fort Worth 2012, no pet.). "[A]n appellate court 'will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, and unsupported by guiding rules and principles.'" *Sister Initiative*, 2020 WL 726785, at *29 (quoting *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied)).

Although this standard of review gives the trial court wide latitude, its discretion is not limitless; the trial court is still bound by the law, the pleadings, and the evidence. *See* Tex. R. Civ. P. 301; *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *In re Russell*, 321 S.W.3d 846, 855 (Tex. App.—Fort Worth 2010, orig. proceeding). Thus, "[a] trial court abuses its discretion by awarding relief to a person who has not requested

---

[24]"[W]hile the nature and contours of an equitable award are within trial court discretion, the predicate legal question of whether an adequate remedy is available on a given set of facts should typically be reviewed de novo." *Credit Suisse AG v. Claymore Holdings, LLC*, 610 S.W.3d 808, 819 (Tex. 2020). But this predicate legal question is not before us for consideration.

such relief in a live pleading"; absent trial by consent, "a judgment unsupported by pleadings is void." *Raym v. Tupelo Mgmt., LLC*, No. 02-19-00477-CV, 2020 WL 3865273, at \*6 (Tex. App.—Fort Worth July 9, 2020, no pet.) (mem. op.) (recognizing that "[a] court's jurisdiction to render judgment is invoked by pleadings" (quoting *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g))); *Russell*, 321 S.W.3d at 855; *see also* Tex. R. Civ. P. 67, 301; *Peterson, Goldman & Villani, Inc. v. Ancor Holdings, LP*, 584 S.W.3d 556, 570 (Tex. App.—Fort Worth 2019, pet. denied) ("A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent.").

## III. Discussion

In his sole issue, Marshall argues that the trial court abused its discretion by failing to recognize and compensate the community estate for its equitable interest in the skid steer.[25] He contends that the great weight of the evidence[26] instead required

---

[25]Specifically, Marshall contends—in what he expressly frames and addresses as "one issue"—that "the failure of the trial court to recognize the community interest in the Skid Steer was against the weight of the evidence, resulted in the unjust enrichment of Appellees, and was an abuse of the trial court's discretion." He argues that the trial court "erred in failing to compensate the community property estate for its equitable interest in the skid steer" and asks this court to "reverse and remand" to determine "what amount of restitution should be paid to the community estate for its equitable interest in the Skid Steer."

[26]Marshall's use of the term "great weight of the evidence" implicitly challenges the factual sufficiency of the judgment. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) ("When a party attacks the factual sufficiency of an adverse finding on an issue on which [h]e has the burden of proof, [h]e must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the

the trial court to grant his claim for equitable relief under the doctrine of unjust enrichment. But Marshall's challenge fails on numerous fronts.

First, Marshall did not plead any claims or defenses asking the trial court to grant the relief he faults it for denying, nor has he argued that his claim for equitable relief was tried by consent. Furthermore, Marshall relies upon unjust enrichment as the basis for his requested relief, but this court has held that unjust enrichment is not an independent cause of action.

## A. Failure to Request Relief

Marshall faults the trial court for failing to grant relief he did not formally request—either in a pleading or through trial by consent. *See* Tex. R. Civ. P. 67, 301. Indeed, Marshall does not even attempt to argue that his alleged equitable claim was

---

evidence."). However, his brief does not expressly identify the legal claim he believes was established or disproven by the great weight and preponderance of the evidence. And, as discussed *infra* Section III.A, he did not plead any claims or affirmative defenses requesting compensation related to the skid steer.

Given Marshall's application of the great weight of the evidence standard, his representation that he sued the Moving Company for equitable relief, his complaint that the trial court failed to award him compensation, and his repeated assertion of and apparent reliance upon unjust enrichment as an independent cause of action, we interpret Marshall's appeal as a challenge to the trial court's denial of Marshall's equitable unjust enrichment claim. However, we do not analyze the sufficiency of the evidence supporting Marshall's alleged unjust enrichment claim because—for the reasons discussed below—he was prevented from recovering on this claim as a matter of law. *See infra* Sections III.A and III.B; *see also Cole v. Gwendolyn Parker, Inc.*, No. 05-13-01655-CV, 2015 WL 4626750, at *5 (Tex. App.—Dallas Aug. 4, 2015, no pet.) (mem. op.) (rejecting sufficiency challenge because appellant failed to plead for relief he alleged the trial court should have granted).

13

tried by consent; rather, he is under the mistaken impression that he pleaded an equitable cause of action related to the skid steer.

Specifically, Marshall asserts that his amended counterpetition "countersued intervenors seeking equitable relief as to . . . a piece of equipment"—namely, the skid steer. But this is simply not the case; Marshall's amended counterpetition did not mention the skid steer at all much less assert any affirmative claims related to the machine. In fact, even in his answer to the petition in intervention, Marshall filed only a general denial in response to the intervenors' breach of contract action.

Although "we liberally construe the pleadings in the pleader's favor[,] . . . a liberal construction 'does not require a court to read into a petition what is plainly not there.'" *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (quoting *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 658 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). Marshall plainly failed to plead any causes of action against the Snows or the Moving Company seeking recognition of or compensation for his alleged equitable interest in the skid steer.

Since Marshall did not plead unjust enrichment and does not argue that it was tried by consent,[27] the trial court could not grant Marshall relief on this basis, and its

---

[27]Even if we were to construe Marshall's current unjust enrichment argument as an implicit argument that the issue was tried by consent—as appellees appear to do—the record as a whole would not support it.

Trial by consent is "limited in application to exceptional cases" and does not apply in "doubtful situation[s]." *Palacios v. Patel*, No. 02-18-00119-CV, 2018 WL

2728441, at *3 (Tex. App.—Fort Worth June 7, 2018) (mem. op.) (quoting *Jackson*, cited below), *supplemented on other grounds*, No. 02-18-00119-CV, 2018 WL 3385571 (Tex. App.—Fort Worth July 12, 2018, no pet.) (mem. op.); *Jackson v. Kisiah*, No. 02-12-00371-CV, 2013 WL 3064517, at *2 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.). An issue is tried by consent if it "clearly appears from the record as a whole that the parties tried out a controverted issue and that the issue was fully developed. . . . under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *In re W.M.R.*, No. 02-11-00283-CV, 2012 WL 5356275, at *12 (Tex. App.—Fort Worth Nov. 1, 2012, no pet.) (mem. op.) (quoting *Fiduciary Mortg. Co. v. City Nat'l Bank of Irving*, 762 S.W.2d 196, 201 (Tex. App.—Dallas 1988, writ denied), and *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied)). But the doctrine "does not apply when the evidence of an unpleaded matter is relevant to the pleaded issues because it would not be calculated to elicit an objection." *Bos*, 556 S.W.3d at 307 (quoting *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 879 n.6 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Here, any evidence that could be said to support Marshall's alleged unjust-enrichment claim was also relevant to the intervenors' pleaded breach of contract claim. *See RayMax Mgmt. L.P. v. New Cingular Wireless PCS, LLC*, No. 02-15-00053-CV, 2016 WL 7241475, at *8 (Tex. App.—Fort Worth Dec. 15, 2016, pet. denied) (mem. op.) (holding no trial by consent because evidence of unpleaded claim was relevant to pleaded claim). Even Marshall's testimony that he wanted H.D. to "buy [him] out" of the skid steer could have been understood as relevant to his interpretation of the nature of his monthly payments pursuant to the oral contract. Indeed, the comments made by the intervenors' counsel during closing argument—speculating about a reimbursement claim and emphasizing Marshall's failure to offer any evidence or legal basis for his requested buyout—reflect the Moving Company's lack of awareness that any unjust-enrichment claim was at issue. *Cf. Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) (emphasizing that both parties presented testimony on unpleaded claim and one party even submitted the issue in the jury charge). Rather, the intervenors emphasized legal title throughout the trial—in the deemed admissions they offered against Marshall, in the testimony they elicited, and in their closing argument. The intervenors' presentation of evidence thus implied an understanding that the parties disputed who held legal title to the skid steer. It was not until Marshall's closing argument—after the evidence had closed and after the intervenors' counsel had given his closing statement—that Marshall mentioned the doctrine of unjust enrichment.

Moreover, even in Marshall's closing argument, he did not harmonize the doctrine of unjust enrichment with the parties' contractual dispute. The doctrine of

failure to do so was not an abuse of discretion. *See* Tex. R. Civ. P. 301; *Trevino v. Frio Cty.*, No. 04-02-00695-CV, 2004 WL 383284, at *1 (Tex. App.—San Antonio Mar. 3, 2004, no pet.) (mem. op.) (rejecting unjust enrichment challenge to take-nothing judgment on Trevino's reimbursement claim because "Trevino had not pl[ead]ed a claim for unjust enrichment[;] the trial court [therefore] could not have erred in failing to grant Trevino relief on an unjust enrichment theory of recovery").

## B. Unjust Enrichment

Furthermore, even if Marshall had pleaded unjust enrichment or tried this theory by consent, his appeal would still fail because this court has repeatedly held that "[u]njust enrichment, itself, is not an independent cause of action." *Davis v. OneWest*

---

unjust enrichment generally only applies in the absence of a valid contact, although some causes of action designed to prevent unjust enrichment are available if a contract has been partially performed or overpaid. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 919 (Tex. App.— Fort Worth 2017, pet. denied). Marshall did not specify which branch of the unjust-enrichment doctrine he intended to rely upon at trial, nor has he clarified the applicable branch of the doctrine on appeal.

In sum, the parties' presentations of evidence regarding the skid steer could fairly be understood as relevant to the intervenors' pleaded breach of contract claim. Even with the benefit of hindsight, a written copy of the proceedings, and an awareness of Marshall's subsequently clarified unjust enrichment theory—none of which the parties had during trial—it is at best "doubtful" that Marshall's unjust enrichment claim was tried by consent. *See Palacios*, 2018 WL 2728441, at *3; *Jackson*, 2013 WL 3064517, at *2. Since trial by consent is never applied in "doubtful" cases, Marshall would not prevail even if we construed his current unjust enrichment argument as an implied attempt to rely on trial by consent. *See Palacios*, 2018 WL 2728441, at *3; *Jackson*, 2013 WL 3064517, at *2.

*Bank N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) (mem. op.) (quoting *Argyle Indep. Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.)); *accord Lawry v. Pecan Plantation Owners Ass'n, Inc.*, No. 02-15-00079-CV, 2016 WL 4395777, at *6 (Tex. App.—Fort Worth Aug. 18, 2016, no pet.) (mem. op.); *Hulen v. Hamilton*, No. 2-06-288-CV, 2008 WL 553812, at *4 (Tex. App.—Fort Worth Feb. 28, 2008, no pet.) (mem. op.); *Friberg–Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007) (per curiam). Rather, unjust enrichment "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.'" *Davis*, 2015 WL 1623541, at *1 (quoting *Argyle*, 234 S.W.3d at 246). Although we recognize that some Texas courts of appeals have held differently,[28] we decline Marshall's implicit invitation to reconsider our holding.

---

[28]The First Court of Appeals has held that "[u]njust enrichment is an independent cause of action." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Cristobal v. Allen*, No. 01-09-00126-CV, 2010 WL 2873502, at *6 & n.1 (Tex. App.—Houston [1st Dist.] July 22, 2010, no pet.) (mem. op.) (holding that unjust enrichment can be an independent cause of action but recognizing that other courts of appeals have held differently). *But see Smith v. DeLooze*, No. 13-14-00092-CV, 2015 WL 124447, at *1 n.2 (Tex. App.—Corpus Christi–Edinburg Jan. 8, 2015, no pet.) (mem. op.) (reaffirming rejection of unjust enrichment as an independent cause of action); *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.) ("Unjust enrichment[] is not an independent cause of action[.]"); *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App.—Texarkana 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action[.]"); *R.M. Dudley*

Here, the only equitable cause of action Marshall mentioned at trial was "unjust enrichment."[29]  And because Marshall did not identify which of the many equitable claims that prevent unjust enrichment he wanted the trial court to apply, his reference to unjust enrichment implied an intention to rely on it as an independent cause of action.  *See Miller v. Recovery Sys., Inc.*, No. 02-12-00468-CV, 2013 WL 5303060, at *8 (Tex. App.—Fort Worth Sept. 19, 2013, pet. denied) (mem. op.) (recognizing that "[a]ssumpsit is a cause of action that was developed to provide a remedy for circumstances involving unjust enrichment" and that "[o]ver time, assumpsit was divided into various categories").  This implied intention is corroborated by Marshall's position on appeal, in which he appears to assert unjust enrichment as an independent cause of action.  Consequently, even if Marshall had pleaded his unjust enrichment theory or tried the issue by consent, his appeal would fail.

---

*Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action[.]"); *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action[.]"); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied) ("[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery.").

But, ironically, much of the case law Marshall cites in support of his unjust enrichment argument agrees with this court's holding that "unjust enrichment is not an independent claim." *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 891 (Tex. App.—Dallas 2014, pet. denied); *Casstevens*, 269 S.W.3d at 229.

[29]As discussed *supra* Section I.C, Marshall's only reference to "unjust enrichment" came during his closing argument.

## IV.  Conclusion

Marshall's failure to plead for his requested relief and his mistaken reliance on unjust enrichment as an independent cause of action undermine his appeal.  Having overruled Marshall's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  April 22, 2021