**NORHILL ENERGY LLC, Appellant**

v.

**George MCDANIEL, Appellee**

**NO. 02-16-00011-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: April 13, 2017

**912**

ATTORNEY FOR APPELLANT: MARK STEIRER, LAW OFFICE OF MARK STEIRER, DALLAS, TX.

ATTORNEY FOR APPELLEE: CORA MOORE, MOORE & MOORE, MINERAL WELLS, TX.

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

## OPINION

### BONNIE SUDDERTH, JUSTICE

#### I. Introduction

In three issues, Appellant Norhill Energy LLC appeals the trial court's judgment in favor of Appellee George McDaniel. We reverse and render.

#### II. Factual and Procedural Background

On September 20, 2010, Norhill and McDaniel entered into a two-year oil and gas lease on 240 acres of McDaniel's land. Norhill's owner, Steve Selinger, admitted that at the time the lease was executed, he had minimal experience in the oil and gas business. In fact, the McDaniel lease was the first one Norhill had ever tried to drill.

The lease provided for a two-year primary term and for extension after the primary term if Norhill's "drilling or reworking operations" were continued "in good faith and with reasonable diligence." As the end of the primary term approached, Norhill had drilled six holes on McDaniel's property, each yielding no production. According to Selinger, although there was "a lot of oil there," Norhill's pumps couldn't "get it to come through the holes." Instead, they only managed to extract water, which, according to Selinger, was blocking the oil from coming out.

Selinger testified that he planned to drill another well in order to extend the lease past September 20, 2012, but that in June 2012, McDaniel convinced him to try using a submersible pump to remedy the water problem instead, an effort that McDaniel assured him would constitute "reworking" under the lease. According to Selinger and Stanton Freeze, who oversaw production on the McDaniel lease for Norhill, Selinger relied on McDaniel's assurance in deciding to use the submersible pump instead of drilling a seventh hole.

According to Freeze, the pump was installed on June 29, but after a while it stopped working. Freeze testified that Wayne Wooldridge was in charge of monitoring the well for Norhill, but his testimony conflicted with Selinger's recollection at trial that by September 2012, Wooldridge had not worked for Norhill for more than a year. Nevertheless, according to Freeze, in late September or early October, Wooldridge called him to report that something was wrong with the pump. Freeze said that he assumed that Wooldridge would fix it and start it back up but that Wooldridge did not.

Freeze later learned that McDaniel, not Wooldridge, was the person who was actually monitoring the well. And, according to McDaniel's records and testimony, the pump stopped operating sometime around September 2, after which time it was never restarted. Freeze disagreed, testifying that he recalled that the pump was still running at some point after September 20. An electricity bill for the property was also admitted into evidence to demonstrate that Norhill was still running electricity on the lease in October 2012.

According to Selinger, later in October, when the parties entered into a new agreement, McDaniel repeated his reassurance that the use of the submersible pump had constituted "reworking" sufficient to extend the primary lease-term. McDaniel denied this, testifying that he had never agreed that the lease would be extended beyond September 20 and that he had never had a conversation with Selinger to that effect.

One month after the expiration of the primary term, on October 19, McDaniel and Norhill executed a new agreement that took the leasehold in a new direction. Instead of Norhill reworking or renewing the lease, the parties executed an agreement that Norhill would assign the lease back to McDaniel.

The new agreement comprised two single-page documents, the first of which, entitled "Assignment of Oil and Gas Lease," provided that McDaniel would pay $50,000 to Norhill in exchange for Norhill's assignment of its interest in the prior oil and gas lease on the property. The last sentence of the Assignment recited that it was "EXECUTED this 19 day of October, 2012, but effective only upon the receipt by [Norhill] of the consideration set forth above."

The second document, a letter agreement, added various other terms and conditions to the agreement, such as ownership of the equipment at the drill site and plugging obligations and liability. In it, the parties agreed that "[McDaniel] will pay to [Norhill] the consideration of $50,000 as set forth in the Assignment within thirty (30) days of the date hereof, this agreement being executed simultaneously with the Assignment." The final provision of the letter agreement included an integration and merger clause: "In conjunction with the Assignment, this sets forth the entire agreement by and between the parties hereto." Although Norhill took the position at trial that it had performed under the agreement by assigning the lease back to McDaniel, no assignment was offered or received into evidence at trial, other than the October 19 Assignment that expressly provided that it was "effective only upon the receipt" of $50,000 from McDaniel.

After more than thirty days passed and McDaniel still had not paid Norhill the $50,000, Norhill sued McDaniel for breach of contract, fraud, money had and received, and promissory estoppel.

Selinger testified at trial that the new agreement was struck between the parties when McDaniel approached Norhill with an offer to repurchase the lease for $50,000 so that McDaniel, in turn, could

sell the lease to another entity for $60,000. Selinger stated that Norhill's execution of the October 19 documents reflected the parties' agreement to this arrangement.

According to Selinger, prior to the expiration of the primary term of the lease, Norhill, too, had received an offer to purchase the lease for $50,000. At trial Selinger claimed, "I had 50,000 in my pocket. I had the same fifty from [McDaniel] until he decided he would keep it all." In other words, Selinger testified that he was poised to receive $50,000 in exchange for the lease either way, the only question being which party would receive the assignment from him.

Freeze also characterized the October 19 agreement as an "either/or" proposition, but his understanding was not that Norhill would consider assigning the lease to a third party. Instead, Freeze understood that the parties agreed that either McDaniel would sign the October 19 agreement or Norhill would bring a rig to the property to drill in order to extend the lease.

Although McDaniel initially denied that he had agreed to pay $50,000 to purchase the lease back from Norhill, alleging that Selinger had forged his name to the October 19 documents, McDaniel conceded at trial that he had signed the agreement, that he had understood it, and that in it he had agreed to pay $50,000 to Norhill. But, according to McDaniel, by the time he signed the October 19 agreement, he had already leased the property to a third party. McDaniel testified that he signed the October 19 agreement because Freeze had told him that he would be in trouble for having leased the property to someone else if he did not sign it and pay $50,000 to Norhill. McDaniel testified, "I thought I was in trouble for signing with the new contract. That's what they led me to believe."

Sometime after October 19, when the $50,000 was not forthcoming, Freeze testified that he spoke with McDaniel in passing, that McDaniel acknowledged that he owed Norhill $50,000, and that McDaniel told him that he was still trying to get the money from "these people up in Mineral Wells." Selinger testified that he was "patient" with McDaniel for "four or five months," because McDaniel assured him that he had not "closed his deal" with the new leaseholders. "And then all of the sudden he got the money, and a few days afterwards he said, ["Y]ou know, I would rather not pay you. I'm going to try to find a way out of this deal, and I'm going to talk to a lawyer," and "I really don't want to pay you this. I need the money more than you, and I'm going to talk to a lawyer and see if I can get out of paying you." At trial McDaniel generally confirmed this account by Selinger. McDaniel admitted that when he received the money, he told Selinger that he was going to try to find a way out of paying him and that he also told Selinger that he needed the money more than Selinger did.

At trial, Norhill argued that McDaniel was a liar who led Norhill to rely on the lease remaining in effect, then agreed to pay Norhill $50,000, and then reneged on the deal. Norhill asked for the jury "to award $50,000 in damages for each of the causes of action," and assured the jury that "the judge will reduce any damages awarded so that there's no double recovery." [1]

1. The jury was charged with answering each question about damages separately and not to increase or reduce the amount in one answer because of their answer to any other question about damages. Despite this instruction and Norhill's argument, the jurors sent out notes during deliberations, asking, "To award $50,000 on Ques. 4 and award $50,000 on Ques. 13—Are these two added together?" They also asked for clarification on Question

McDaniel argued that Selinger was the liar and pointed out the disparity between electrical usage before and after September 20 as proof that the pump had not been operating to extend the lease. McDaniel further argued that while he did not pay the money, he had been duped into agreeing to pay it in the first place, and that he should not owe Norhill anything.

In a verdict unanimous as to all but one answer, the jury found for Norhill on breach of contract, promissory estoppel, and money had and received—all of its causes of action except fraud. The jury also found that McDaniel's breach of the October 19 agreement was not excused, that the lease had been "extended beyond the primary term by [ ] action of the parties before September 20th, 2012," and, under theories of waiver, quasi-estoppel, and estoppel, that McDaniel had forfeited his right to assert that the 2010 lease had expired. The jury found in favor of Norhill on its promissory estoppel action, finding detrimental and foreseeable reliance on McDaniel's "promise," as well as on Norhill's money-had-and-received claim, finding that McDaniel held money "that in equity and good conscience belongs to [Norhill]."

However, the jury awarded damages on only one cause of action. Under the heading, "MONEY HAD AND RECEIVED," the jury found that McDaniel "[held] money that in equity and good conscience belong[ed] to [Norhill]," and that $50,000 would "fairly and reasonably compensate [Norhill] in this regard to money had and received." In response to the damage question related to Norhill's breach of contract action, the jury initially wrote "$50,-000," but it then marked through that amount and wrote "0." The presiding juror initialed the change.

Both parties moved for judgment notwithstanding the verdict (JNOV). In its JNOV motion, Norhill asked the trial court to substitute the $50,000 damage award on the money-had-and-received action in place of the "0" amount the jury found for breach of contract. The trial court denied this request.

In his JNOV motion, McDaniel asked the trial court to disregard the $50,000 award for money had and received and enter a take-nothing judgment instead. In support of his position, McDaniel argued that money had and received is a quasi-contract theory and that Norhill was not entitled to recover under a quasi-contract theory when the jury found "a valid, express contract." The trial court granted McDaniel's motion, disregarded the $50,000 damage award under the money-had-and-received action and, because the jury found "0" as to Norhill's damages for breach of contract, entered a take-nothing judgment as to all parties.

The trial court subsequently denied Norhill's motion for new trial. On appeal, Norhill complains that the trial court erred by denying Norhill's motion for JNOV and motion for new trial and by granting McDaniel's motion for JNOV.

### III. Standard of Review

■ A trial court may disregard a jury verdict and render JNOV if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). A directed verdict is proper only under limited circumstances: (1) when the evidence conclu-

---

4 "as to the meaning of the words damages [sic]—Is this in addition to the $50,000 agreed to? (Question #3)" The trial court responded that it was not allowed to answer the questions presented and referred the jurors back to their instructions.

sively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 454 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).

■ To determine whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). That is, we may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

## IV. Discussion

In its first issue, Norhill argues that the trial court erred by denying JNOV on its breach of contract claim.

## A. Breach of Contract—Legal Sufficiency Challenge

■ Norhill complains that the trial court erred by denying JNOV on its breach of contract claim because there was no evidence to support the jury's award of $0 damages and the uncontradicted evidence conclusively established contract damages of $50,000 as a matter of law. In its motion for JNOV, Norhill asked the trial court to "disregard the jury's findings as to [$0] damages" and "award [Norhill] $50,000 in damages." The only way the trial court could have properly disregarded the jury's "0" answer and substituted $50,000 would have been if Norhill had conclusively proven, as a matter of law, that it suffered damages in the amount of $50,000. *See Scharer v. John's Cars, Inc.*, 776 S.W.2d 228, 230–31 (Tex. App.—El Paso 1989, writ denied) ("[T]he only way the trial court could have properly disregarded the jury's answer of 'None' and substituted its own findings [of $5,820] would have been if the evidence conclusively established, as a matter of law, that Appellee had suffered damages in the amount of $5,820.00"). The question before us, then is whether Norhill established as a matter of law contract damages in the amount of $50,000. *See id.* We hold that Norhill did not.

■ While McDaniel's failure to pay $50,000 to Norhill established the *breach* element of Norhill's contract claim, Norhill fails to demonstrate how it proved—conclusively or otherwise—that Norhill was entitled to $50,000 as damages for breach of contract. "The ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach," *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex.

App.—Dallas 2012, no pet.), and "[b]y the operation of that rule, a party generally should be awarded neither less nor more than his actual damages." *Id.* (citing *Stewart v. Basey*, 150 Tex. 666,245 S.W.2d 484, 486 (1952)). Generally speaking, damages for breach of contract protect three interests: an expectation interest,[2] a reliance interest,[3] and a restitution interest.[4] *Id.*

Here, without any guidance as to the proper measure of damages, the jury was asked to determine a sum of money that "would fairly and reasonably compensate ... Norhill ... for its damages, if any, that resulted from [McDaniel's] failure to comply." The jury replied, "$0." Other than Selinger's testimony that, prior to entering into the October 19 Assignment agreement with McDaniel, he intended to sell his unexpired leasehold interest to another party for $50,000, and McDaniel's agreement to pay Norhill $50,000 for the assignment, the jury had no evidence before it—whether related to benefit of the bargain, reliance, or restitution damages— as to Norhill's actual damages that resulted from McDaniel's breach. For example, Norhill offered no evidence as to the cost Norhill would have incurred to fully perform all of its obligations under the contract, such as the removal of the property and equipment that it had installed on McDaniel's land. *See, e.g., Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("[T]he benefit-of-the-bargain measure of damages is not based on the facts as they actually occurred; rather, it focuses on what the plaintiff's economic position would have been if the contract had been fully performed."). Thus, we overrule Norhill's first issue.[5]

## B. Money Had and Received

In its third issue, Norhill argues that the trial court erred by granting JNOV for McDaniel on the ground that the jury's finding that there was a contract between the parties foreclosed an action for money had and received.

The supreme court has instructed us that a claim for money had and received is equitable in nature and that to prevail on this action, a plaintiff need only prove that (1) the defendant holds money, and (2) the money in equity and good conscience belongs to the plaintiff. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (citing *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*,

**2.** "[B]enefit-of-the-bargain" damages serve to protect the expectation interest by putting the plaintiff into as good a position as he would have been if the contract had been performed. *Sharifi*, 370 S.W.3d at 148.

**3.** "Reliance" damages, in contrast, reimburse the plaintiff for expenditures made toward the execution of the contract in order to restore the status quo before the contract. *Sharifi*, 370 S.W.3d at 149.

**4.** "Restitution" damages restore the plaintiff to as good a position as he would have been in if no contract had been made by allowing the plaintiff to recover money or property taken by the defendant from the plaintiff. *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ). Restitution damages are allowed for breach of an express contract only when a plaintiff has partially performed but has been prevented from fully performing by the defendant. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).

**5.** Norhill contends that "apparently," jury confusion caused the award of $0 on the contract damages question. However, we decline Norhill's invitation, unsupported by any citation to authority, to speculate into the reasons behind the jury's act in striking the $50,000 that it had placed in the blank and replacing it with $0.

358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)).[6] The court has explained, "Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." "A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" "In short, it is an equitable doctrine applied to prevent unjust enrichment." "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him."

*Id.* (citations omitted).

What the supreme court has not told us, however, is whether, as an equitable doctrine, an action for money had and received can be brought when the money in dispute is part of a valid contract that would otherwise provide an adequate remedy at law, observing,

> We have said that some equitable claims or defenses may be supplanted in certain contexts if an adequate legal remedy exists. *See BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 770 (Tex. 2005) ("Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable.") As Stonebridge does not contest the viability of the claimants' money-had-and-received claim in the context presented, *we presume without deciding* its availability in this case.

*Stonebridge Life Ins. Co. v. Pitts,* 236 S.W.3d 201, 203 n.1 (Tex. 2007) (emphasis added).

██ But while the supreme court has not yet answered the question that presents itself here, it has provided us with guidance as to *why* certain equitable claims may be barred when an express contract exists between the parties. In *Fortune Production Co. v. Conoco, Inc.,* the court explained,

> The plaintiffs in this case elected to pursue a claim for unjust enrichment rather than breach of contract.... The effect of the written contracts on claims for unjust enrichment is one of law.
>
> Unjust enrichment claims are based on quasi-contract.... A quasi-contract ... "is not a contract at all but an obligation imposed by law to do justice

---

**6.** In light of the supreme court's pronouncements on the issue, as well as other cases from this court, and to the extent that we have not already implicitly overruled it, we expressly overrule *Leier v. Purnell,* No. 02-04-00039-CV, 2004 WL 2830645, at *4 (Tex. App.—Fort Worth Dec. 9, 2004, pet. denied) (mem. op.), to the extent that the case holds that only four circumstances may give rise to a claim for money had and received. Money-had-and-received claims need only meet the two elements set out above. *See H.E.B., L.L.C. v. Ardinger,* 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.) ("Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another."); *Friberg–Cooper Water Supply Corp. v. Elledge,* 197 S.W.3d 826, 831–32 (Tex. App.—Fort Worth 2006) (observing that an action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action and aims at the abstract justice of the case, looking solely to the inquiry of whether the defendant holds money that in equity and good conscience belongs to the plaintiff), *rev'd on other grounds,* 240 S.W.3d 869 (Tex. 2007); *Everett v. TK–Taito, L.L.C.,* 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.) (stating that an action for money had and received is not based on wrongdoing but instead looks only to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another).

even though it is clear that no promise was ever made or intended."

Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, with certain exceptions not relevant here.... *That is because parties should be bound by their express agreements.* When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement. Accordingly, *when a party claims that it is owed more than the payments called for under a contract, there can be no recovery for unjust enrichment* " 'if the same subject is covered by [the] express contract.' "

. . . .

The written contracts in this case foreclose any claims for unjust enrichment. A cause of action for unjust enrichment *is not available to recover payments in addition to the contract price the parties agreed upon*....

52 S.W.3d 671, 683–85 (Tex. 2000) (citations omitted). As explained in *Fortune Production*, the general rule barring quasi-contract or equitable theories when there is an express contract to define the parties' obligations rests on the fundamental premise that "parties should be bound by their express agreements." *Id.* at 684. And equitable theories should not be permitted to allow a recovery "inconsistent with the express agreement." *Id.*

But the court in *Fortune Production* also reiterated that this bar on equitable claims is a general rule, not an absolute one. *Id.* The court acknowledges and explicitly notes that exceptions apply. *Id.* For example, overpayments under an express contract can be recovered under the equitable theories of restitution and unjust enrichment. *Id.* (citing *Sw. Elec. Power Co. v.*

*Burlington N. R.R. Co.*, 966 S.W.2d 467, 469–70 (Tex. 1998)).

Here, Norhill did not seek to vary the terms of the express agreement between the parties. At trial, McDaniel admitted, and the jury found, that on October 19, McDaniel agreed to pay Norhill $50,000 within thirty days in exchange for Norhill's assignment of the lease back to McDaniel. McDaniel admitted that instead, he sold that lease to a third party, and Selinger testified that McDaniel told him he had sold the lease for $60,000 and had received those funds. Out of that $60,000, Norhill sought recovery of only the amount that the contract specified McDaniel would pay to Norhill, $50,000. Based on the evidence, the jury found that—in equity and good conscience—McDaniel held $50,000 that belonged to Norhill, and the jury awarded to Norhill $50,000 of the $60,000 that the evidence showed McDaniel received from his assignment of the lease to a third party.

Under these facts, we hold that Norhill's claim for money had and received was not barred by the existence of the express contract and that the trial court erred by granting JNOV for McDaniel and by rendering a take-nothing judgment against Norhill on its money-had-and-received claim. We sustain Norhill's third issue.

## C. Breach of Contract—Factual Sufficiency Challenge

Based on our resolution of Norhill's third issue, we need not reach Norhill's second issue, in which it complains that the trial court abused its discretion by denying its request for a new trial because the jury's contract damages award was against the great weight of the evidence. *See* Tex. R. App. P. 47.1.

## V. Conclusion

Having overruled Norhill's first issue but sustained Norhill's third issue, we reverse the trial court's judgment and render judgment for Norhill on its money-had-and-received claim.

GABRIEL, J., filed a dissenting and concurring opinion.

LEE GABRIEL, JUSTICE, dissenting and concurring.

I agree with the majority that the evidence was sufficient to support the trial court's denial of appellant Norhill Energy LLC's motion for JNOV on its breach-of-contract claim. But I respectfully disagree with the majority that Norhill's claim for money had and received is a viable claim under the facts presented here, entitling Norhill to a rendered judgment for $50,000.

As the majority ably explains, Norhill and appellee George McDaniel entered into two contracts: (1) the September 20, 2010 oil and gas lease, which had a two-year primary term that could be extended "so long as operations are continued in good faith and with reasonable diligence" and (2) an October 19, 2012 agreement, consisting of two integrated and merged documents, under which Norhill agreed to assign its lease back to McDaniel in exchange for McDaniel's payment of $50,000 to Norhill. The October 2012 agreement would not go into effect if McDaniel failed to pay Norhill by November 18, 2012. McDaniel admittedly did not pay Norhill. Meanwhile, McDaniel re-leased his property to a third party and received $60,000.

Norhill filed suit against McDaniel, asserting that McDaniel breached the October 2012 agreement, not the 2010 lease, and seeking damages under a breach-of-contract theory. Norhill also raised a claim for money had and received (MHAR) in the alternative to its breach-of-contract claim because McDaniel "holds $50,000 that in equity and good conscience belongs to Norhill." A jury found that McDaniel had breached the October 2012 agreement but had incurred no damages "that resulted from [McDaniel's] failure to comply."[1] The jury also found in favor of Norhill on its MHAR claim and found that $50,000 would "fairly and reasonably compensate [Norhill] in this regard to [MHAR]." Norhill's motion for JNOV focused on the lack of a damage finding on its breach-of-contract claim and requested that the trial court "disregard the jury's answer to the question on damages for breach of contract and award [Norhill] $50,000 in actual damages." McDaniel countered in his own motion for JNOV that the damages for MHAR "must be disregarded" because a valid, express contract foreclosed any recovery for MHAR. The trial court disagreed with Norhill and agreed with McDaniel, entering a take-nothing judgment on Norhill's claims. Norhill sought a new trial on each of its claims, but argued only the insufficiency of the evidence to support the jury's finding of no damages for breach of contract. The trial court denied this motion as well. I believe the trial court hit the nail on the head here.

The majority explains in clear language that the jury's finding of no damages arising from McDaniel's breach of the October 2012 agreement can withstand Norhill's legal-sufficiency attack. Indeed, McDan-

---

1. The jury charge specifically provided that "Contract" in the breach-of-contract section of the charge "means the agreement dated October 19, 2012, ... under which Norhill Energy agreed to assign the lease back to

George McDaniel and George McDaniel agreed to pay Norhill Energy $50,000 within 30 days." The jury found that Norhill and McDaniel agreed to the terms of this contract.

iel's failure to pay under the October 2012 agreement was the operative breach, not conclusive evidence of the damage to Norhill arising from that breach. *See generally Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex. App.—Austin 1998, pet. denied) ("A party's expectation interest is measured by his anticipated receipts and losses caused by the breach *less any costs or other loss he has avoided by not having to perform.*"). Thus, the jury's finding was supportable, and the trial court correctly denied Norhill's motion for JNOV and motion for new trial attacking this finding.

I further agree with the trial court that Norhill was not entitled to recover under its claim for MHAR. The jury found that the October 2012 agreement was an enforceable contract, that McDaniel failed to comply with it, and that McDaniel's noncompliance was not excused. MHAR is a quasi-contractual, equitable remedy used to prevent unjust enrichment that, as pointed out by the majority, required Norhill to prove (1) that McDaniel held money (2) that in equity and good conscience belonged to Norhill. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015). But these two elements are implicated only if a claimant is entitled to seek such relief. Indeed, Norhill implicitly recognized this by raising MHAR only in the alternative to its breach-of-contract claim.

As the majority discusses, the general rule is that there can be no recovery under any quasi-contractual theory if a valid, express contract covers the claims raised in the suit. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). However, the majority continues by noting that the supreme court in *Fortune Production* stated in dictum that there are "certain exceptions" to this general rule, which were "not relevant" in that appeal.[2] *Id.* These exceptions, the majority concludes, are present here. In short, because Norhill failed to recover damages on its breach-of-contract claim, the equities demand that McDaniel be made to pay the monies owed to Norhill in their October 2012 agreement under the theory of MHAR.

This holding takes a claim for MHAR outside the boundaries of a quasi-contractual cause of action. Several courts have concluded that if there is an express contract that covers the parties' dispute, as undisputedly is the case here, a quasi-contractual—equitable—claim such as unjust enrichment or MHAR cannot lie. *See, e.g., Becker*, 2002 WL 31255021, at *4 & n.32; *Compton v. Citibank (S.D.), N.A.*, 364 S.W.3d 415, 418–19 (Tex. App.—Dallas 2012, no pet.); *Tex Star Motors, Inc. v. Regal Fin. Co.*, 401 S.W.3d 190, 202 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723–25 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex. App.—Fort Worth 2008, pet. dism'd). And the supreme court in *Fortune Production* underscored this proposition by stating that "parties should be bound by their express agreements" and then by foreclosing Conoco's unjust-enrichment claims because they were covered by the terms of its contract with Fortune Production. *Fortune Prod.*, 52 S.W.3d at 684–85. That Norhill failed to recover damages on its breach-of-contract claim is not dispositive; the existence of an enforceable contract

---

**2.** The case the supreme court cites to illustrate these exceptions was a case allowing a restitution or unjust-enrichment claim to recover overpayments under a contract. *Fortune Prod.*, 52 S.W.3d at 684 (citing *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469–70 (Tex. 1998)); *see also Becker v. Nat'l Educ. Training Grp., Inc.*, No. 3;01-CV-1187-M, 2002 WL 31255021, at *4 n.32 (N.D. Tex. Oct. 7, 2002).

between the parties as found by the jury, covering the dispute at issue, is the impediment to Norhill's claim for MHAR.

I believe, as does the majority, that the trial court correctly concluded that the jury's finding of no damages for Norhill's breach-of-contract claim was supported by the evidence. To this portion of the majority opinion, I concur. But I further believe that the trial court rightly concluded that Norhill could not alternatively recover for MHAR based on the unchallenged finding that the parties had a valid and enforceable contract, which covered the dispute at issue. Accordingly, I would affirm the trial court's judgment. Because the majority does not, I respectfully dissent.