KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendants' First Presidio Bank, and its Successor-in-Interest, Big Bends Banks National Association, D/B/A The Marfa National Bank ("Defendants" or "the Bank") Motion for Judgment Pursuant to Federal Rule of Civil Procedure 52(c) ("Motion"), ECF No. 86, made orally following the close of Plaintiff Roberto Villarreal's case in chief at trial on June 13, 2017, and filed on the Court's electronic docket shortly thereafter, in the above-referenced case. After due consideration, the Motion is hereby GRANTED in part and DENIED in part. The Motion is GRANTED as to Plaintiff's wrongful-dishonor claim and DENIED as to Plaintiff's unjust-enrichment claim.
I. BACKGROUND
Unless otherwise noted, the following facts are undisputed. Plaintiff is a Mexican national residing in Chihuahua, Mexico. Plaintiff married Amida Anna Loya Galindo *550 in 2004 and remains married to her. Plaintiff was previously married to Irene Amparan de Villarreal, who died in April of 2000. First Presidio Bank opened for business in 1975 in Presidio, Texas. Big Bend Banks, N.A., merged with First Presidio Bank on or about January of 2008.
Plaintiff held a checking account and several certificates of deposit with Defendants. The instant case concerns a dispute over five certificates of deposit that First Presidio Bank issued to Plaintiff between April of 1983 and June of 1984. Each of these certificates of deposit were payable to Plaintiff or Irene Amparan de Villarreal, contained language restricting their transferability and assignability, and automatically renewed upon maturity at prevailing market interest rates. Either Plaintiff or Irene Amparan de Villarreal could have redeemed the certificates of deposit without the signature of the other by presenting the original, physical certificate of deposit to the Bank.
Plaintiff placed the physical certificates of deposit in a safe deposit box that he rented at First Presidio Bank when they were first issued. Plaintiff's checking account with the Bank was closed in 2008 with a negative balance. In May of 2014, Plaintiff retrieved the physical certificates of deposit from the safe deposit box. Plaintiff subsequently requested that the Bank redeem the certificates of deposit. The Bank concluded that Plaintiff had already redeemed the certificates of deposit in question and refused. The Bank has no records concerning the certificates of deposit in question other than two microfilm rolls of quarterly records from the mid-1980s.
On March 24, 2015, Plaintiff filed the instant lawsuit. See Pl.'s Compl., ECF No. 1. On March 16, 2017, Plaintiff filed his Second Amended Complaint, now the operative complaint in this matter, asserting two causes of action against the Bank: (1) wrongful dishonor under Section 4.402 of the Texas Business & Commerce Code ; and (2) unjust enrichment. See Pl.'s Second Am. Compl., ECF No. ECF No. 60. This Court conducted a bench trial of this matter on June 12, 2017 and June 13, 2017. Defendants moved for judgment pursuant to Federal Rule of Civil Procedure 52(c) on June 13, 2017. See Defs.' Mot. Plaintiff responded on June 19, 2017. See Pl.'s Resp., ECF No. 93.
II. DISCUSSION
A. Standard
In a bench trial, once "a party has been fully heard on an issue ... the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 52(c). When dismissing a case pursuant to Rule 52(c), a court is not required to make any special inferences or review the facts in the light most favorable to the plaintiff." See Koenig v. Aetna Life Ins. Co. , No. 4:13-CV-0359, 2015 WL 6554347, at *4 (S.D. Tex. Oct. 29, 2015) (citing Weber v. Gainey's Concrete Prods., Inc. , No. 9731267, 1998 WL 699047, at *1 n. 1 (5th Cir. Sept. 21, 1998) ). A court entering judgment pursuant to Rule 52(c)"must find the facts specially and state its conclusions of law separately" as described in Rule 52(a). Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC , No. 4:13-CV-3291, 2016 WL 3077405, at *6 (S.D. Tex. June 1, 2016) (citing Fed. R. Civ. P. 52(a)(1) ).[1]
*551 B. Analysis
Defendants assert that Plaintiff's claim for wrongful dishonor fails on five grounds and that Plaintiff's claim for unjust enrichment fails on three grounds. See Defs.' Mot. 2-14. Additionally, Defendants contend that the presumption-of-payment doctrine, the relevant statutes of limitation, and laches bar Plaintiff's claims. See id. at 14-19. The Court addresses these arguments in turn.
1. Plaintiff's claim for wrongful dishonor fails
Defendants argue that "Plaintiff has no claim for wrongful dishonor since Plaintiff is unable to demonstrate the Defendants are a 'payor bank.' " Defs.' Mot. 3. Plaintiff does not directly respond to this contention. See Pl.'s Resp. 2-3. Plaintiff maintains that "[t]he express language of Section 4.402 of the Texas Business & Commerce Code states that a payor bank is liable to its customer for the wrongful dishonor of an item that is properly payable." Id. at 3.
The merits of a wrongful dishonor claim are governed by Section 4.402 of the Texas Business and Commerce Code, which provides that "[a] payor bank wrongfully dishonors an item if it dishonors an item that is properly payable, but ... may dishonor an item that would create an overdraft unless it has agreed to pay the overdraft." Tex. Bus. & Com. Code Ann. § 4.402(a) (emphasis added). Further, "[a] payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." Id. § 4.402(b) (emphasis added). A " 'payor bank ' means the bank that is the drawee of a draft. " Id. § 4.105(3) (emphasis added). A " 'draft ' means ... an item, other than an instrument, that is an order. " Id. § 4.104(a)(7) (emphasis added).[2]
An order is a "written instruction to pay money signed by the person giving the instruction." Id. § 3.103(6); Hodge v. N. Trust Bank of Tex. , 54 S.W.3d 518, 525 n.5 (Tex. App. 2001). Further, "[a]n authorization to pay is not an order unless the person authorized to pay is also instructed to pay." Tex. Bus. & Com. Code Ann. § 3.103(6). In a recent case, a Texas appellate court found that "debit memos ... direct[ing] that funds be moved out of a customer's account" were orders within the meaning of Section 3.103 of the Business and Commerce Code. Compass Bank v. Nacim , 459 S.W.3d 95, 105 (Tex. App. 2015). Texas courts have only rarely had occasion to expound on the meaning of "order" under the Business and Commerce Code, but the Montana Supreme Court, interpreting the identical language from the Uniform Commercial Code ("U.C.C."),[3] identified money orders and bank checks as examples of "order[s]" within the meaning of the U.C.C. Smith v. Farmers Union Mut. Ins. Co. , 361 Mont. 516, 260 P.3d 163, 171 (2011). The Supreme Court of Connecticut found that a "withdrawal slip ... [with] a written instruction to pay out *552 $32,318.26 in cash" was also an "order" within the meaning of the U.C.C. W & D Acquisition, LLC v. First Union Nat. Bank , 262 Conn. 704, 817 A.2d 91, 96 (2003).[4] And the comments to the U.C.C. indicate that a cashier's check is yet another type of order. See U.C.C. § 3-103 cmt. 2; see also In re Clark Contracting Servs., Inc. , 438 B.R. 913, 922 (W.D. Tex. 2010) (internal citations omitted) ("Courts in this jurisdiction recognize the Official Comments to the UCC as persuasive guidance of legislative intent.").
Debit memos directing that funds be moved out of a customer's account, money orders, checks, withdrawal slips with written instructions to pay out cash, and cashier's checks share a common characteristic: written instructions to pay money. See Compass Bank , 459 S.W.3d at 105 ; Farmers Union , 260 P.3d at 171 ; W & D Acquisition , 817 A.2d at 96 ; U.C.C. § 3-103 cmt. 2. By contrast, the certificates of deposit at issue in this case do not contain "written instructions to pay money" as required to constitute an "order" under the Business and Commerce Code. See Tex. Bus. & Com. Code Ann. § 3.103(6) ; Hodge , 54 S.W.3d at 525 n.5. The four certificates of deposit from 1983 indicate that they are "[p]ayable to the depositor upon presentation and surrender of this certificate." Pl.'s Exs. 1-4 (emphasis added). The remaining certificate of deposit from 1984 indicates that First Presidio Bank "will pay this certificate ... when you present and deliver it to us[.]" Pl.'s Ex. 5 (emphasis added).
The relevant language-"payable ... upon presentation and surrender" and "will pay ... when you present and deliver it"-contemplates the possibility of payment at some later date, conditional on the occurrence of events in the future. See Pl.'s Exs. 1-4, 5. Indeed, the holder of a certificate of deposit could choose to never seek payment by allowing the certificate of deposit to renew indefinitely. See , e.g. , Pl.'s Ex. 1 (describing how the certificate of deposit "will be automatically renewed for successive terms" unless the depositor redeems it or the bank notifies the depositor of its intention to cash in the certificate). Certificates of deposit that can be renewed in perpetuity are dissimilar to checks, for example, which contain instructions to pay in the here and now. Here, the certificates of deposit contain a promise of payment that may only be actuated by some subsequent event. See Pl.'s Exs. 1-5.
Perhaps a closer question is whether the certificates of deposit became "written instructions to pay money" when Plaintiff attempted to redeem them in 2014. Crucially here, however, Plaintiff testified that he attempted to redeem the certificates of deposit personally after removing them from the safe deposit box. See Villarreal Dep. 95-96. Requesting payment in person, even while simultaneously presenting documents that evince a promise to pay , is distinct from providing written instructions to pay money , as required to show the existence of an order under Section 3.103. Plaintiff's request to redeem his CDs is unlike other items courts have deemed to be an "order" or "written instruction to pay money"-for example, a check or money order-because Plaintiff made the payment request in person, and not in writing. See Farmers Union , 260 P.3d at 171 ; W & D Acquisition , 817 A.2d at 96.
The Court accordingly finds that neither Plaintiff's certificates of deposit nor his personal request to redeem the certificates of deposit were "orders" within the meaning *553 of the Business and Commerce Code. See Tex. Bus. & Com. Code Ann. § 3.103(6) ; Hodge v. N. Tr. Bank of Tex. , 54 S.W.3d 518, 525 n.5 (Tex. App. 2001). Further, as recounted above, only a "payor bank" can be liable for damages caused by the wrongful dishonor of an item. See Tex. Bus. & Com. Code Ann. § 4.402(b). A "payor bank," in turn, is the drawee of a "draft." Id. § 4.105(3). And a "draft," within the meaning of Chapter 4 of the Business and Commerce Code, is an "order." Id. § 4.104(a)(7). Thus, the Court finds that Defendants, having never been the recipient of an "order" during the events relevant to this litigation, are not a "payor bank" within the meaning of the Business and Commerce Code. See id. § 4.402. Only a payor bank can be liable for wrongful dishonor; accordingly, Plaintiff's claim for wrongful dishonor is dismissed. See Tex. Bus. & Com. Code Ann. § 4.402(b). Further, having found that Plaintiff's claim for wrongful dishonor fails for the reasons stated above, the Court does not address Defendants' additional arguments related to Plaintiff's wrongful-dishonor claims.
2. Plaintiff's claim for unjust enrichment survives
In just under two pages, Defendants set out three distinct arguments for dismissal of Plaintiff's claim for unjust enrichment.[5] See Defs.' Mot. 13-14. First, Defendants argue that the money-had-and-received action has been "supplanted" by the Texas Business and Commerce Code. See id. at 13. Second, Defendants assert that Plaintiff's money-had-and-received claim fails because it is based on a debt evidenced by a writing. See itation index="31" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%204.402">id. at 14. Finally, Defendants claim that Plaintiff's money-had-and-received claim fails because Plaintiff has no ownership interest in the accounts at issue. See itation index="32" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%204.402">id. The Court evaluates each argument in turn.
a. The common-law cause of action for money had and received has not been supplanted by the Texas Business and Commerce Code
Defendants argue that "the common law cause of action for money had and received has been supplanted by the Texas Business and Commerce Code" and conclude that "Plaintiff's claim for money had and received fails." Defs.' Mot. 13. To support this argument, Defendants note that "the Texas Business and Commerce Code regulates a bank's handling of deposits and collections for its customers[,]" and that money had and received "is not listed as a cause of action that supplements the Texas Business and Commerce Code." Id. Plaintiff does not respond to this contention. See Pl.'s Resp. 3-5.
*554 The Texas Business and Commerce Code provides that: "Unless displaced by the particular provisions of this title , the principles of law and equity ... shall supplement its provisions." Tex. Bus. & Com. Code Ann. § 1.103 (emphasis added); accord 1/2 Price Checks Cashed v. United Auto. Ins. Co. , 344 S.W.3d 378, 387 (Tex. 2011). Put another way, not all common-law claims are displaced by the Texas Business and Commerce Code. See Bank One, Tex., N.A. v. Little , 978 S.W.2d 272, 277 (Tex. App. 1998). Indeed, the Texas Supreme Court has held that common-law claims may exist when they do not conflict with the provisions of the Texas Business and Commerce Code. See Bryan v. Citizens Nat'l Bank , 628 S.W.2d 761, 764 (Tex. 1982) ; Signal Oil & Gas Co. v. Universal Oil Prods. , 572 S.W.2d 320, 330 (Tex. 1978) ; see also Plano Lincoln Mercury, Inc. v. Roberts , 167 S.W.3d 616, 624 (Tex. App. 2005) ("To the extent they do not conflict with the Uniform Commercial Code's provisions, common law principles complement the Uniform Commercial Code.").
Here, Defendants invoke " Tex. Bus. & Com. Code §§ 4.101 -.504"-the Code section that concerns "a bank's handling of deposits and collections for its customers"-as their basis for arguing that Plaintiff's money-had-and-received claim is "supplanted by the Texas Business and Commerce Code." See Defs.' Mot. 13. Defendants appear to posit that the existence of a Code section that governs bank deposits is sufficient to "supplant" a claim for money had and received related to certificates of deposit. See id. This is error. Absent a conflict with a particular provision, "[c]ommon-law principles complement the Uniform Commercial Code." Plano Lincoln Mercury , 167 S.W.3d at 624 ; see also Tex. Bus. & Com. Code Ann. § 1.103 ("Unless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions.") (emphasis added); 1/2 Price Checks , 344 S.W.3d at 387 ; Bryan , 628 S.W.2d at 764.
In a recent case, the Fifth Circuit identified a conflict between the common-law claim for money had and received and Texas Business and Commerce Code Section 3.405, but ultimately held that the conflict could "be resolved without entirely displacing the money had and received claim." Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A. , 759 F.3d 498, 508 (5th Cir. 2014). Instead, the Court found that the money-had-and-received claim "must simply incorporate the affirmative defense provided by § 3.405." Id. Thus, even an outright conflict between the money-had-and-received claim and the particular provisions of the Texas Business and Commerce Code was insufficient to displace the money-had-and-received claim. See id. Here, Defendants fail to identify a conflict with a particular provision of the Texas Business and Commerce Code, see Defs.' Mot. 13, and this Court sees none.
Further, Texas courts have held that "the implied contract action for money had and received has survived the [Texas Business and Commerce] Code's adoption." Stone v. First City Bank of Plano, N.A. , 794 S.W.2d 537, 543 (Tex. App. 1990) ; see also Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A. , 791 F.2d 1177, 1180 (5th Cir. 1986) (holding that the common-law action for money had and received was not displaced by adoption of the U.C.C. in Texas); Ross v. Bank of Am. N.A. , 693 F.Supp.2d 692, 696 n.1 (S.D. Tex. 2010) ("The revised UCC contemplates that actions for money had and received will be available."). Accordingly, Defendants' argument that Plaintiff's money-had-and-received claim has been supplanted by the Texas Business and Commerce Code fails.
*555 b. Plaintiff's claim for money had and received is valid despite its relationship to a debt evidenced by a writing
Defendants argue that because Plaintiff's claim for money had and received fails because the certificates of deposit are debts "evidenced by a writing." Defs.' Mot. 14. Defendants cite Friberg-Cooper Water Supply Corp. v. Elledge , 197 S.W.3d 826, 831 (Tex. App. 2006), for the proposition that claims for money had and received must be based on debts not evidenced by a writing. See ids="8410696" index="52" url="https://cite.case.law/sw3d/197/826/#p831">id. Plaintiff responds that the Texas Supreme Court has held that a cause of action for money had and received is less restricted by formalities than any other form of action. See Pl.'s Resp. 5. Plaintiff concludes that "there is no absolute prohibition for a cause of action for money had and received/unjust enrichment if the debt is evidenced by a writing[.]" Id.
The Texas Supreme Court has held that a claim for money had and received is "equitable in nature" and that, in order to prevail, "a plaintiff need only prove that (1) the defendant holds money, and (2) the money in equity and good conscience belongs to the plaintiff." Norhill Energy LLC , 517 S.W.3d at 917 (citing Plains Exp. & Prod. Co. v. Torch Energy Advisors Inc. , 473 S.W.3d 296, 302 n.4 (Tex. 2015) ) (emphasis added). The Fifth Circuit described the principles governing claims for money had and received in Texas as follows:
The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him. Again, it has been declared that a cause of action for money had and received is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff.
Bank of Saipan v. CNG Fin. Corp. , 380 F.3d 836, 840 (5th Cir. 2004) (internal citations omitted) (emphasis added).
However, various intermediate appellate courts have written that the quasi-contractual nature of the money-had-and-received action means that it only applies to debts not evidenced by a writing. See MGA Ins. Co. v. Charles R. Chesnutt, P.C. , 358 S.W.3d 808, 815 (Tex. App. 2012) ; Friberg-Cooper , 197 S.W.3d at 831 (citing Amoco Prod. Co. v. Smith , 946 S.W.2d 162, 164 (Tex. App. 1997) ). The Texas Supreme Court has not expressly addressed whether money-had-and-received claims may lie for debts not evidenced by a writing.[6]
However, the Texas Supreme Court has made clear that the bar against quasi-contract or equitable claims when there is an express writing defining the obligations of the parties is not an absolute bar, but a general rule. See Fortune Prod. Co. v. Conoco, Inc. , 52 S.W.3d 671, 684 (Tex. 2000). In Fortune Production , certain plaintiffs sought to recover payments above the contract price on an unjust-enrichment theory. Id. at 685. The Court held that no such recovery was permissible because "parties should be bound by their express agreements." Id. at 684. Put another way, equitable theories should not be *556 permitted to allow recovery "inconsistent with the express agreement." Id. However, the Court also wrote that overpayments made pursuant to an express contract may be recovered under the equitable theories of restitution and unjust enrichment. See ids="9492401" index="63" url="https://cite.case.law/sw3d/52/671/#p684">id. In so doing, the Court explicitly reiterated that the bar on unjust-enrichment claims where express contracts are at issue is subject to "exceptions." Id. And indeed, in Southwestern Electric Power Co. v. Burlington Northern Railroad Co. , the plaintiff successfully recovered overpayments made pursuant to a written contract on an unjust-enrichment theory. See 966 S.W.2d 467, 469-70 (Tex. 1998).
This Court is bound to read the pronouncements of intermediate state appellate courts to the effect that money had and received claims are only for debts not evidenced by a writing, see MGA Ins. Co. , 358 S.W.3d at 815 ; Amoco Prod. Co. , 946 S.W.2d at 164, in light of the Texas Supreme Court's holdings in Fortune Production , 52 S.W.3d at 684 and Southwestern Electric Power , 966 S.W.2d at 469-70. Accordingly, this Court understands the limitation for debts evidenced by a writing on claims for money had and received to apply only insofar as the terms of writing at issue actually address the matter in dispute. See Fortune Production , 52 S.W.3d at 684-85 ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.").[7]
Here, unlike the plaintiffs in Fortune Production , Plaintiff does not seek payment above and beyond what the relevant agreement specifies. See 52 S.W.3d at 684-85. This case is more closely akin to Southwestern Electric Power , where the plaintiffs successfully recouped improper overpayments on an unjust-enrichment theory. See 966 S.W.2d at 469-70. Of course, Plaintiff seeks to remedy an underpayment, not an overpayment, here. But this is a superficial distinction; the critical fact is that both parties seek payment in accordance with the terms of the express agreement. See ids="11833824" index="73" url="https://cite.case.law/sw2d/966/467/#p469">id. Simply put, the terms of the certificates of deposit do not address the specific matter in dispute-whether or not Plaintiff has redeemed the certificates of deposit-unlike in Fortune Production. See 52 S.W.3d at 684-85. Following the holdings of the Texas Supreme Court in Fortune Production and Southwestern Electric Power , the Court finds that the writing reflecting the debt obligation in this matter does not vitiate Plaintiff's unjust-enrichment claim. See ids="9492401" index="75" url="https://cite.case.law/sw3d/52/671/#p684">id. ; Sw. Elec. Power , 966 S.W.2d at 469-70.
c. Plaintiff's claim for money had and received does not fail for want of an ownership interest in the funds in the certificate-of-deposit accounts
Defendants assert that: "[w]ithout an ownership interest in the money, a plaintiff cannot maintain an action for money had and received." Defs.' Mot. 14. Defendants argue that Plaintiff does not have an ownership interest in the accounts because they are general deposits and thus the "property of the bank." Id. Defendants also rely on Hodge v. Northern Trust Bank of State , 54 S.W.3d 518, 522 (Tex. App. 2001) for the proposition that general *557 deposits are the bank's property. See ids="9484275" index="79" url="https://cite.case.law/sw3d/54/518/">id. Plaintiff does not respond directly to this claim. See Pl.'s Resp. 3-5.
To prove a claim for money had and received, all that a "plaintiff need show is that defendant holds money which in equity and good conscience belongs to him." Staats v. Miller , 150 Tex. 581, 243 S.W.2d 686, 687 (1951) ; see also Bank of Saipan , 380 F.3d at 840. Further, according to the Texas Property Code's chapter on "Property Held by Financial Institutions," a "depositor" is "a person who has an ownership interest in an account." Tex. Prop. Code Ann. § 73.001. Moreover, a certificate of deposit is a record of a bank's debt for a "deposit of money which the bank promises to pay to the order of a designated person." Ames v. Great S. Bank , 672 S.W.2d 447, 449 (Tex. 1984) ; see also Tex. Bus. & Com. Code Ann. § 1.103. "The provisions of a certificate of deposit form a contract which creates the relationship of debtor and creditor between the bank and its depositor." Ames , 672 S.W.2d at 449.
At the outset, the Court is not persuaded that Plaintiff must demonstrate an "ownership interest" per se in the money at issue in this matter. Again, all a "plaintiff need show [to prove a claim for money had and received] is that defendant holds money which in equity and good conscience belongs to him." Staats , 243 S.W.2d at 687.[8] To the extent that Defendants mean to suggest that Plaintiff need show something more than another party holding money "which in equity and good conscience belongs to him" by arguing that Plaintiff must demonstrate an "ownership interest" in the certificates of deposit here, the Court rejects this view. See ids="2328426,10214189" index="88" url="https://cite.case.law/sw2d/243/686/">id. Even granting Defendants' premise for the sake of the argument, however, Plaintiff, as a depositor, has an ownership interest in the certificates of deposit. See Tex. Prop. Code Ann. § 73.001 (providing that a "depositor" is "a person who has an ownership interest in an account.").
It is also true, as Defendant avers, that the monies from the certificate-of-deposit accounts are "general deposits" and, thus, the property of the bank. See Hodge , 54 S.W.3d at 520. Nonetheless, as a creditor of the bank, Plaintiff maintains an ownership interest in the monies the bank holds on his behalf in its general funds. See Vickory v. Summit Nat. Bank , 702 S.W.2d 324, 325 (Tex. App. 1986) (quoting 9 Tex. Jur. 3d Banks Sec. 153 (1980) ) ("It is elementary that the relationship of debtor and creditor exists between the bank and its depositor."); see also Ames , 672 S.W.2d at 449. Further, Hodge only instructs that there is no action for conversion of specific property when a bank wrongfully pays a deposit out of the general funds of the bank. See 54 S.W.3d at 522. Here, Plaintiff is attempting to mount an unjust-enrichment claim.
Finally, this Court believes that sustaining Plaintiff's unjust-enrichment claim is consistent with the admonition of the Texas Supreme Court that such claims be "less restricted and fettered by technical rules and formalities than any other form of action ... [and] aim[ ] at the abstract justice of the case[.]" Staats , 243 S.W.2d at 687-88 (emphasis added). For these reasons, Defendants' argument that Plaintiff cannot bring a claim for money had and received because he lacks an ownership interest in the relevant accounts fails.
*558 3. Defendants' arguments related to the presumption-of-payment doctrine, statutes of limitation, and laches fail for the reasons stated in this Court's order denying summary judgment
In a recapitulation of their summary-judgment arguments,[9] Defendants contend that the presumption-of-payment doctrine, the relevant statutes of limitation, and laches bar Plaintiff's claims. See Defs.' Mot. at 14-19. The Court considered these arguments at length and rejected them in its order denying summary judgment. See Order of January 17, 2017, ECF No. 34. The Court is aware that, unlike at the summary-judgment stage, when considering a motion under Federal Rule of Civil Procedure 52(c), it does not owe any special inferences to the plaintiff, nor must it consider the facts in the light most favorable to the plaintiff. See Koenig , 2015 WL 6554347, at *4. Nevertheless, the Court's analysis in its order denying summary judgment was not particularly fact-bound, nor did it hinge on granting favorable inferences to Plaintiff. See generally Order of January 17, 2017.
This Court concluded, as a matter of law, that the presumption of payment of debts after a twenty-year lapse has no application in Texas and that Plaintiff's certificates of deposit would suffice to rebut the presumption of payment were it to apply. See id. at 6-14. Additionally, the Court found that the relevant time interval for limitations purposes was the less-than-one-year period from Plaintiff's demand for payment from the Bank and Plaintiff's initiation of this litigation. See id. 14-17. Accordingly, the Court concluded that Plaintiff's claims were not barred by limitations. See id. Finally, the Court found that Plaintiff had not engaged in unreasonable delay in asserting his legal or equitable rights, nor had Defendants detrimentally changed their position as the result of any unreasonable delay, nor were there extraordinary circumstances of the type to justify a dismissal based on the laches defense before the statute of limitations had run. See id. at 17-20. Thus, the Court rejected Defendants' invocation of the laches defense.
The Court reiterates those conclusions here and incorporates the arguments made in support of those conclusions from its Order of January 17, 2017 in full. See generally id. Accordingly, the Court does not grant judgment as a matter of law to Defendants based on the presumption-of-payment doctrine, limitations, or laches.
III. CONCLUSION
For the foregoing reasons, Defendants' Motion, ECF No. 86, is hereby GRANTED in part and DENIED in part. The Motion is GRANTED as to Plaintiff's wrongful-dishonor claim and DENIED as to the unjust-enrichment claim. The Court will enter its ultimate findings of fact and conclusions of law by separate order.
SO ORDERED.

In the instant Motion, Defendant's challenges do not turn on any of the disputed facts at issue in this matter. They are purely legal challenges akin to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). As such, the Court has included a brief recitation of those undisputed facts necessary to resolve this Motion and addresses by separate order its ultimate findings of fact and conclusions of law in this matter.

A "draft" can also "mean[ ] a draft as defined in Section 3.104 [of the Business and Commerce Code]." Tex. Bus. & Com. Code Ann. § 4.104(a)(7). But Chapter 3 of the Business and Commerce Code deals with negotiable instruments. The certificates of deposit at issue here say on their face that they are "NOT NEGOTIABLE[.]" Pl.'s Exs. 1-5. As a result, these certificates of deposit are not negotiable instruments, see Tex. Bus. & Com. Code Ann. § 3.104(d), and the relevant definition of "draft" is found in Chapter 4, which governs bank deposits.

The U. C. C. provides that " 'Order' means a written instruction to pay money signed by the person giving the instruction." U.C.C. § 3-103. Montana codifies this language at Section 30-3-102 of the Montana Code. Mont. Code Ann. § 30-3-102(f).

Connecticut likewise codifies that an "order means a written instruction to pay money signed by the person giving the instruction" at Section 42a-3-103 of the Connecticut General Statutes. Conn. Gen. Stat. Ann. § 42a-3-103(5).

A number of Texas courts have held that plaintiffs cannot state a claim for unjust enrichment as an independent cause of action under Texas law. See , e.g., Casstevens v. Smith , 269 S.W.3d 222, 229 (Tex. App. 2008). However, the Texas Supreme Court has held to the contrary. See Fortune Prod. Co. v. Conoco, Inc. , 52 S.W.3d 671, 682-86 (Tex. 2000) (upholding summary judgment on some of plaintiff's unjust-enrichment claims). Texas courts have read claims for "unjust enrichment" as pleading an equitable common law claim for money had and received. See , e.g. , London v. London , 192 S.W.3d 6, 12-14 (Tex. App. 2005). Claims for money had and received and unjust enrichment are materially and substantively identical. See ids="8418641" index="102" url="https://cite.case.law/sw3d/192/6/#p12">id. ("[A claim for money had and received] is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another.") (citation omitted); see also Staats v. Miller , 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951) ("The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him."). Accordingly, the Court also treats the terms "money had and received" and "unjust enrichment" as interchangeable herein, just as Defendants have done in their Motion. See generally Defs.' Mot.

The Court does not doubt that the certificates of deposit in this case are writings which evidence debts. See Gary v. Fed. Deposit Ins. Corp. , No. 92-4525, 1992 WL 386803, at *2 (5th Cir. Dec. 23, 1992) (holding that a depository contract is a "contract in writing for all purposes"); Ames v. Great S. Bank , 672 S.W.2d 447, 449 (Tex. 1984) ("The provisions of a certificate of deposit form a contract which creates the relationship of debtor and creditor between the bank and its depositor.").

Defendants' reading of the law appears to suggest that a plaintiff can never bring a claim for money had and received for debts evidenced by a writing. See Defs.' Mot. 14. This view is fatally undermined by a number of cases. See, e.g., Janvey v. Suarez , 978 F.Supp.2d 685, 698-99 (N.D. Tex. 2013) (finding plaintiffs stated a claim based on unjust-enrichment theory for certificate-of-deposit proceeds); Janvey v. Alguire , 846 F.Supp.2d 662, 674 (N.D. Tex. 2011) (same); Norhill Energy LLC v. McDaniel , 517 S.W.3d 910, 919 (Tex. App. 2017) (holding that a "claim for money had and received was not barred by the existence of [an] express contract").

Defendants echo this standard in the opening line of this portion of their argument: "To prove a claim for money had and received, a plaintiff must establish that the defendant holds money that in equity and good conscience belongs to the plaintiff." Defs.' Mot. 14.

Defendants incorporate "all case law and arguments found in their Motion for Summary Judgment, Motion for Reconsideration, and applicable Replies" with respect to their arguments relating to the presumption-of-payment doctrine and statutes of limitation. See Defs.' Mot. 14 n.9, 18 n.18